No. 12,920.

Trustees of the State Normal School *v.* Wightman.
(25 P. [2d] 193)

Decided September 11, 1933.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. GEORGE A. CROWDER, Assistant, Mr. FRED A. HARRISON, Assistant, Mr. SIDNEY P. GODSMAN, Assistant, for plaintiff in error.

Mr. CLIFFORD H. STONE, Mr. RICHARD E. CONOUR, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE defendant in error, E. Russell Wightman, re-

covered judgment for $1,333.33 against the plaintiff in error, the trustees of the state normal school, for services as head of the department of physics in the state normal school at Gunnison, Colorado, better known as the western state college. The trustees claim that they owe Wightman nothing, and ask that the judgment be reversed.

1. At the outset the trustees contend that this action is against the state in its governmental capacity, and that the state has not consented to be sued. By §8164 of C. L. '21 the plaintiff in error (which is a board consisting of six trustees) is constituted a body corporate by the name and style of "the trustees of the state normal school," and it is therein provided that "as such and by its said name" it "may hold property for the use of said school, be party to all suits and contracts, and do all things thereto lawfully appertaining, in like manner as municipal corporations of this state." These powers and those conferred by §8168 are ample. By the plain meaning of the language used, these sections subject the trustees to an action on such a contract as is relied upon here, inasmuch as the powers and duties of the trustees are made applicable in full force to the western state college by §8179. This special defense of the trustees, which is in effect a plea to the jurisdiction, is therefore overruled.

2. The real issue here is whether a resignation tendered by Wightman was duly accepted before it was withdrawn. To determine this it becomes necessary to examine the facts in considerable detail. On April 29, 1929, at a regular meeting held in Greeley, the trustees approved the recommendation of Aspinall, president of the college, that a salary of $4,000 be offered Wightman as professor of physics for the ensuing year. Wightman, who had been a member of the same faculty continuously since September of 1920, accepted the offer. This clearly constituted a contract of employment. On September 12, 1929, Aspinall dispatched a letter to Wight-

man. It was based ostensibly upon the former's alleged discovery that, contrary to a representation claimed to have been made to the college by Wightman (but denied by him), the latter did not possess the degree of doctor of philosophy. The letter contained an urgent request for Wightman's resignation. On September 20, Wightman gave his resignation, addressed to the president, as follows: "I wish to tender my resignation as head of the department of physics of Western State College of Colorado to take effect as soon as the vacancy caused by my leaving can be filled." (A doubt exists as to whether the vacancy, if any, was ever filled; but, owing to the views we are about to express, it will not be necessary to discuss that question.) The resignation was accompanied by a letter stating that the resignation was being made "with no strings whatever," and expressing regret at having caused embarrassment. Thereafter, however, Wightman informed the president by a telegram of October 3, that he was recalling his resignation, that a letter of explanation would follow, and that he was ready to fulfill his contract. The letter arrived the next day. It called attention to the fact that the resignation was not to take effect until the vacancy should be filled, and declared that he was withdrawing his resignation because he had discovered the request therefor to have been actuated by a different reason from the one assigned. According to the testimony of Wightman, the demand for his resignation was due to the pressure of some unnamed personal enemy of his. In this Wightman was corroborated. Copies of the aforesaid telegram and explanatory letter were promptly transmitted by Wightman to the trustees. Up to that time the trustees had taken no official action relative to the resignation. What had been done was done by Aspinall as president of the college, without the official cognizance of the board, though the evidence shows that one of its officers knew of Aspinall's acts and informally approved of them.

230

We need not consider whether, as a matter of educational policy, a doctor's degree ought to be regarded as important or indispensable for the head of a department of physics. As a matter of fact, at least two other heads of departments in the college, among about ten departments, were possessed of no higher degree than a master's. In 1920, when first appointed, Wightman had all but completed the work for his Ph.D. in a university of the highest standing. After many delays due at least in part to circumstances beyond Wightman's control, he received this degree during the very college year here involved. He claims to have kept the college informed of some of these delays, and we must accept the finding of the trial court on that issue. From the record before us we must infer—as the trial court expressly found—that Wightman's services were satisfactory, for they continued unbroken during a period of nine years and under at least two presidents of the college. In the absence of a positive and recognized rule requiring the degree, and in the absence of an express condition to like effect in the contract of employment, the failure to hold a Ph. D. could not, under the facts here found, be a legitimate ground either for removal or for deeming the position vacant; nor could the matter of a particular degree be significant except in inducing or withholding the original appointment, as a mere matter of administrative policy. A contract of employment becomes effective when the appointee has accepted. So also an offer by the appointee to terminate or surrender an appointment by resignation is effectual only when the resignation is duly accepted by the body whose duty it is to make or terminate the appointment. Probably the trustees here could have avoided this controversy, had they previously adopted a general rule—and expressly incorporated it in the contract of employment —that a resignation should be deemed accepted whenever it is lodged with the president or other named official either of the college or of the trustees. How-

ever, there being no rule to govern such a contingency, the trustees alone have the power to accept a resignation and thus to sever the contractual relation between the college and a member of its faculty, even as they alone have the power to establish that relation. An effort was made by the trustees to show that they had given instructions to the president to employ and discharge members of the faculty, but the lower court properly ruled out all evidence of such unauthorized delegation of the trustees' statutory powers and duties. From what has been said we may draw the conclusion that the resignation of Wightman was not legally accepted. Not having been legally accepted, the resignation could be and was legally withdrawn; therefore the Wightman contract for the college year 1929-1930 remained in full force and effect. The district court was right in its view of the law, and its findings are supported by the evidence. There was no prejudicial error.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HOLLAND concur.