No. 21722.

BIG SANDY SCHOOL DISTRICT NO. 100-J, ELBERT COUNTY, COLORADO *v.* BARNEY C. CARROLL.

(433 P.2d 325)

Decided November 13, 1967.

RAYMOND J. CODY, JOHN W. LENTZ, for plaintiff in error.

KINGSLEY & WOLF, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

THE central issue presented by this writ of error is whether a school board may delegate to its superintendant of schools the "power" and "duty" to employ teachers.

Before detailing some of the facts, it is deemed advisable to set forth at the very outset the particular statute with which we are here concerned. C.R.S. 1963, 123-10-19, which pertains generally to the "powers of a school board," provides in part as follows:

"(1) *Every school board,* unless otherwise especially provided by law, *shall have the power, and it shall be their duty*:

"(2) *To employ* and discharge *teachers,* mechanics and laborers, *and to fix* and order paid *their wages*; . . ." (Emphasis added.)

The essential facts in the instant case are not really in dispute, although as to some peripheral matters there are some rather marked disputes. Sometime in June 1963 the five members of the school board for the Big Sandy School District No. 100-J "authorized" the superintendent of schools to "contact and employ" a combination principal and teacher for the high school in Simla. This "authorization" did not result from any

formal action of the school board, but nonetheless was apparently acquiesced in by all five board members. The superintendent was advised as to the "salary limits" within which he could then fix the salary of the new principal-teacher, once he was located. Otherwise, there were no additional limitations or restrictions placed on the superintendent, and it was strictly up to him to find and hire a combination principal and teacher for the high school.

To facilitate the entire process, the President and Secretary of the school board signed "in blank" an employment contract form used by the District. In other words, the employment contract form signed by the President and Secretary of the Board did not, of course, designate the other contracting party, whose identity as of that time was unknown, nor did it fix the salary or the dates the employment would either start or end.

In mid-August of 1963 Carroll first contacted the superintendent about possible employment as both the principal and a teacher in the Simla High School. On that occasion, Carroll and the superintendent conferred at some length about the teaching vacancy, and the two of them generally "came to terms," although Carroll said that he wanted to talk the matter over with his wife before he made any final decision. On this occasion the superintendent, in the presence of Carroll, typed in the "blanks" in the employment contract form theretofore signed in blank by the President and Secretary of the school board. Specifically, the superintendent typed in the name of "Barney Carroll" as the other party to the contract. The superintendent also typed in the salary as being "sixty-five hundred $6,500 dollars," payable in twelve monthly installments, as well as typing in the period of employment as "beginning August 21, 1963 and ending August 20, 1964."

According to Carroll, though this was denied by the superintendent, he (Carroll) called the superintendent on the following day and "accepted" the offer. Carroll

testified that immediately thereafter he signed the original contract, and a copy thereof, both of which had been given him on the preceding day by the superintendant. Carroll retained the original of this contract and upon trial the document was offered and received into evidence. As concerns the copy of the aforementioned contract, Carroll testified that a few days after his telephone conversation with the superintendent he left the copy, signed by him, on the superintendant's desk. The superintendent testified, however, that he never found any such signed copy on his desk.

Without going into any great detail as to why he was relieved of his duties, Carroll was purportedly "discharged" by the superintendent some ten days later. It should be noted that the purported discharge occurred on the day before classes were to commence and was triggered by the fact that Carroll had "missed" the schools' registration day. However, no hearing was ever held as to whether this so-called discharge was "for cause," or not.

Carroll immediately brought suit against the District, alleging a contract of employment between himself and the District and a breach of that contract by the District when he was wrongfully discharged "without good cause shown or a hearing."

Upon trial of this matter the basic contention of the District was that the school board could not lawfully delegate to its superintendent the power to employ teachers and that accordingly there never was a valid contract between Carroll and the District. Though this case was tried to a jury, at the conclusion of all the evidence the trial court took the case from the jury on the premise that there were no issues of fact, only issues of law. The trial court then ruled that there was a valid contract of employment between Carroll and the District and that the District had breached the contract by summarily discharging Carroll without the benefit of any hearing as to whether there was "good

cause" for his discharge. Judgment was then entered in Carroll's favor in the sum of $6,500 and interest from August 21, 1963. By writ of error the District now seeks reversal of the judgment thus entered against it. Our study of the matter convinces us that under the circumstances there never was a valid and binding contract between Carroll and the District, and that the trial court therefore erred in its entry of judgment in behalf of Carroll.

■ The applicable statute not only empowers the school board to employ teachers and fix their wages, but goes on to declare that such is the *duty of the school board*. C.R.S. 1963, 123-10-19. In other words, the power to employ teachers is exclusively vested by the legislature in the school board, and not in any other body or official. It being, then, the *duty* of the school board to employ teachers and fix their wages, the question is then raised as to whether the duty which has been thus placed by the legislature in the school board may be delegated, or on the contrary whether this is a nondelegable duty.

■■ By way of background, the general rule is that a municipal corporation, or a quasi-municipal corporation such as the District, may delegate to subordinate officers and boards powers and functions which are ministerial or administrative in nature, where there is a fixed and certain standard or rule which leaves little or nothing to the judgment or discretion of the subordinate. However, legislative or judicial powers, involving judgment and discretion on the part of the municipal body, which have been vested by statute in a municipal corporation may *not* be delegated unless such has been expressly authorized by the legislature. See C. Rhyne, Municipal Law 74, and E. McQuillan, Municipal Corporations 845-49 (3d ed. 1966).

■■ In our view the power to employ teachers and fix their wages is not a mere ministerial or administrative matter, where little or no judgment or discretion

is involved, but on the contrary is a legislative or judicial power involving the exercise of considerable discretion. Hence, under the general rule, such power cannot be delegated. The power to employ teachers has been conferred by the legislature exclusively on the school board, and therefore it cannot be delegated. To hold to the contrary would thwart the obvious intent of the legislature and would amount to nothing more than pure judicial legislation.

For general background information as to the mode of employing school teachers, see 78 C.J.S. 994 et seq. where the following appears:

"Only such persons as are authorized by the constitution or statute have power to appoint teachers, principals, and superintendents. Under various statutes this power is conferred on school boards, on boards of trustees of school districts or boards of directors of subdistricts, on boards of education of cities or counties, and on school committees.

\* \* \* \*

"Some statutes confer on the designated officer or body exclusive power to appoint teachers and other school employees. *Such power, when conferred on a particular body, cannot be delegated, and an applicant for appointment is chargeable with knowledge of such fact.* Accordingly, the duty of the board to make the selection cannot be delegated to the superintendent, even though the statute makes it obligatory on the board to select teachers from nominations made by him." (Emphasis added.)

In his brief, counsel for Carroll recognizes that this court has not yet had occasion to rule upon the particular defense presented here by the District. However, counsel argues that *School District v. Stone,* 14 Colo. App. 211, 59 P.885 "indicates" that the contention of the District that Carroll never did have a valid contract with the District is without merit. We do not so understand *School District v. Stone, supra.* The Court of Ap-

peals held in that case that the school board "in any event" had by its actions ratified the teacher's contract there under consideration. "Ratification," then, is the "holding" in *School District v. Stone, supra.* It is quite true, however, that in that case there is language which suggests that a school board may enter into a binding contract of employment even though such action on the part of the school board is informal and does not occur at a formal meeting of the board. However, there the "teacher" had personally solicited each member of the board for employment and each board member had consented to the employment. Such is far different from the instant case where Carroll had no personal contact with any member of the school board. In fact, in the instant case the school board apparently didn't even know that Carroll had been purportedly hired until Carroll brought suit and service of process was obtained upon the District by serving the individual members of the school board.

A prior decision of this court which is deemed more in point is *Trustees v. Wightman,* 93 Colo. 226, 25 P.2d 193. That case involved a dispute between a professor at Western State College and the Trustees who governed that institution. There the professor tendered his resignation to the President of the school, but "recalled" his resignation before it was actually delivered to the Trustees. It would appear that the Trustees, like the school board in the instant case, were charged by statute with the hiring and firing of professors. In that case we stated that the offer by the professor to resign was effective if and only if the resignation was accepted by the body "whose duty it is to make or terminate the appointment." We then went on to declare that the Trustees "alone" had the power to accept the resignation and to thus sever the contractual relationship between the college and a member of its faculty, "even as they alone have the power to establish that relationship."

See also *School District v. Parker,* 82 Colo. 385, 260 P.521 where we declared that a contract of employment between a teacher and a school district comes into being when "the school district, through its board, hires the teacher, and the teacher enters the employ of the district."

The suggestion is made that to preclude Carroll from recovery against the school board is a harsh and inequitable result. Our examination of the record does not disclose that all of the so-called equities of the case are with Carroll. From his brief performance it would appear that Carroll perhaps didn't really have his heart in this particular employment, and consequently there may well have been a very real issue as to whether Carroll "abandoned" his contract. At least the District contended there was a genuine issue of fact in this regard.

In this same general connection, it is asserted by counsel for Carroll in his brief that the trial judge readily saw through this entire "scheme." By the use of the word "scheme" counsel apparently is of the view that inasmuch as the school board purportedly delegated its power to employ teachers to the superintendent, the District cannot now in good conscience defend against the action brought by Carroll on the ground that the school board could not lawfully delegate this power to its superintendent. We do not so view the matter. It is the District, and not the school board, which must pay this judgment if it is permitted to stand. And in *Englewood v. Ripple and Howe,* 150 Colo. 434, 374 P.2d 360, we approved the following language:

"Persons dealing with a municipal corporation must at their peril take notice, not only of the powers vested in the corporation, but of the mode by which its powers are to be exercised so far as such mode is mandatory."

But if this should be deemed a "hard" case, hard cases should not be allowed to make bad law. To permit Carroll to recover against the District would make some

very bad law and would open the door to great abuse. In short, by statute the school board is empowered to hire teachers and while it may well want to act on the recommendation of its superintendent, it cannot escape this statutory duty by completely shifting the responsibility to its superintendent. This is so because that is the way the legislature wanted it.

The judgment is reversed and the cause remanded with direction that Carroll's claim be dismissed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.