No. 25912

Rhoda Pacheco, as next friend of her minor children, Delia C. Pacheco, Darlene Pacheco, Charles M. Pacheco, Waldo T. Pacheco, and Lucas Pacheco, in her own behalf and in the behalf of others similarly situated v. School District Number 11 of El Paso County, Colorado, William J. Rudy, Lee Goodbar, Jr., John L. Wiman, Robert. S. Grimes, and Marion Sonderman, Board Members

(516 P.2d 629)

Decided December 3, 1973. Opinion modified and as modified rehearing denied December 24, 1973.

Joe A. Cannon, Tom W. Armour, for plaintiffs-appellees.

Horn, Anderson & Johnson, R. E. Anderson, for defend-ants-appellants.

Colorado Association of School Boards, amicus curiae.

Reese Miller, Attorney.

School District No. 1, amicus curiae.

Richard C. Cockrell, Peter M. Eggleston, Attorneys.

Harvard Center for Law and Education, amicus curiae.

Marian Wright Edelman, Merle McClung, Attorneys.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Mrs. Pacheco brought this action on her own behalf and as next friend of her children who are attending elementary school, junior high school and high school. Plaintiffs sought the following relief: (1) the recovery of fees and expenditures required by the defendant school district to be paid by students; (2) a declaratory judgment that the collection of such fees is violative of Colo. Const. art. IX, § 2; (3) an injunction to effectuate the requested declaratory judgment; and (4) an order permitting them to maintain this suit as a class action. The court entered judgment in favor of the plaintiffs for $99.22, ruled that they would not be permitted to maintain this as a class action, and denied injunctive relief. Only the defendants have appealed. We dismiss the appeal.

The fees involved were for activity cards, gymnasium towels, shop materials and books. In addition, it was necessary for gym clothing to be purchased or rented, and there were expenditures for school supplies such as pens, pencils and notebooks.

The court found that the junior high and high school students were required to purchase activity cards for activities such as athletic contests, dances, plays, concerts, school

newspapers, the school annual, and other like activities, unless payment was made for each individual activity or unless "prior arrangements for admission [were] made with the principal or sponsoring teacher."

In the complaint, the plaintiffs did 'not predicate their claim for relief upon Mrs. Pacheco's indigency. However, in the direct examination of Mrs. Pacheco by her counsel, a strong showing of indigency was made, including a statement of some of the hardships which she sustained by reason of the school fees and expenditures.

Colo. Const. art. IX, § 2 provides as follows:
"The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. One or more public schools shall be maintained in each school district within the state, at least three months in each year; any school district failing to have such school shall not be entitled to receive any portion of the school fund for that year."

It appears that the school district was acting under the proviso in the following statute:
"A board may not require a pupil who shall not have completed the twelfth grade to pay any fees as a condition of enrollment in school, or as a condition of attendance in any course of study, instruction, or class, except tuition as authorized by law, charges and fees authorized by this section and section 123-30-19, and those fees reasonably necessary for textbooks or expendable supplies if such are not provided free of charge; provided, that miscellaneous fees may be collected on a voluntary basis as a condition of participation or attendance at a school sponsored activity or program not within the academic portion of the educational program." 1965 Perm. Supp., C.R.S. 1963, 123-30-18(2).

The court based its ruling in favor of the plaintiffs upon Mrs. Pacheco's indigency. In its findings of fact the court stated that the activities requiring activity cards "are

integral parts of the overall education program provided in those schools." Nowhere in its conclusions of law does the court find that the fees and expenditures cannot be required to be paid by anyone under the foregoing constitutional provision. In contrast, the conclusions of law specify repeatedly that Mrs. Pacheco cannot be required to pay certain fees and expenditures *by reason of her indigency.* That the court was predicating its ruling solely upon indigency and not upon the pleaded constitutional question is shown by the following statement near the end of the conclusions of law:

"[T]he Court is not unmindful of the statutory provisions, Attorney General's opinion, and case law cited by defendant district, declaring various types of fees and charges to be constitutionally proper. It is the Court's opinion, however, that where, as here, indigency is shown, even though not pleaded, the plaintiff has established a right on the part of her children to participate in all of the integral parts of the school program without charge or payment of fee."

In denying the defendants' motion for a new trial or to alter and amend judgment, the court stated that the evidence supported the finding that the non-academic activities involved are an integral part of the school programs. The court then stated that it was not ruling that it was constitutionally impermissible to charge fees for these non-academic activities:

"In interpreting [the statute], the Court was not unmindful of the presumption of constitutionality nor of the corollary that where two interpretations of a statute are possible, one constitutional and one unconstitutional, it is presumed that the legislature intended the former. Applying that principal to the instant case, this Court simply interpreted the statutory language to permit the collection of miscellaneous fees from non-indigent students. If the statute were to be construed so as to authorize the collection of miscellaneous fees from indigent students, it would be clearly unconstitutional. It may very well be anyway, but that decision need not be made in this case where the students are in fact indigent."

The thrust of the school district's argument on appeal here is that the fees and expenditures do not deprive "a student of the benefits of a free public school and gratuitous education as required by the Colorado Constitution." The appellants mention the court's ruling as to indigency only in passing. No equal protection argument is advanced in the briefs of the parties — and the term "equal protection" is not to be found.

Where there is some mention of the right of recovery as an indigent in some of the *amicus* briefs, there is no argument on this point in the briefs of the parties. The simple fact is that this appeal is directed to matters not ruled upon by the trial court. We should not rule upon the court's resolution of an issue that has not be argued nor upon the separate matters which are argued.

Appeal dismissed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY dissent.

MR. CHIEF JUSTICE PRINGLE dissenting:

In my view the legislature correctly interpreted Colo. Const. art. IX, § 2, when it provided that a school district may charge a fee as a condition for attending on a voluntary basis *school sponsored activities or programs not within the academic portion* of the educational program.

I do not believe the drafters of the constitution intended that all students, regardless of their ability to pay, should, for example, attend proms or athletic contests free of charge. I would here exercise the doctrine of judicial restraint which compels us to defer to the legislative interpretation of what a constitutional provision means, unless that interpretation is clearly prohibited by the constitutional provision itself. I find no such clear prohibition to the legislative pronouncement made here in the constitutional provision relating to the education of children.

I would, however, affirm the judgment of the trial court for I believe it would be invidious discrimination prohibited by the equal protection clause of the state and federal constitutions to refuse to admit students who cannot pay for

school sponsored events to which students who can pay may be admitted upon payment of the fee.

MR. JUSTICE KELLEY dissenting:

The court by dismissing the appeal has avoided deciding the constitutional issue which is, in my opinion, properly before us. By not deciding it now we are only postponing the inevitable.

It is true, as the majority states, that the trial court, under the facts before it, held unconstitutional the proviso of 1965 Perm. Supp., C.R.S. 1963, 123-30-18(2) (hereinafter set out in extracts from the court's order denying defendants' motion for new trial), primarily on the basis of Mrs. Pacheco's indigency. In the findings of fact on which the court's judgment was premised, the court found:

"6. That Palmer High School students and North Junior High School students are required to purchase activity cards to permit their participation in such activities as athletic contests, dances, plays, concerts, school newspapers, the school annual, and other like activities, unless such activities are paid for on an individual basis, or unless prior arrangements for admission are made with the principal or sponsoring teacher; that the enumerated activities are integral parts of the overall education program provided in those schools;
. . ."

Based on the foregoing finding of fact, the court concluded:

"1. With regard to any activity which is an integral and fundamental part of the school program, the district is constitutionally required to provide the same 'gratuitously,' (Article IX, Section 2 of the Colorado Constitution), *at least insofar as the children of indigent parents* are concerned, . . . (Emphasis added.)

"3. Despite the fact that participation in the various activities represented by the school activities cards are voluntary, those activities are an important part of the entire school program and are conducted on school property under the supervision of school personnel. This being so, the district has

an obligation to make those activities available at no cost to children of indigent parents, . . .

. . . .

"6. In arriving at the foregoing conclusion, the Court is not unmindful of the statutory provisions, Attorney General's opinion, and case law cited by defendant district, declaring various types of fees and charges to be constitutionally proper. It is the Court's opinion, however, that where, as here, indigency is shown, even though not pleaded, the plaintiff has established a right on the part of her children to participate in all of the integral parts of the school program without charge or payment of fee."

The School District filed a motion for new trial or to alter and amend the judgment as to "the issue concerning activity fees," stating:

"The issue involved is encompassed in Paragraph 6 of the Court's Findings of Fact and In Paragraphs 3 and 6 of the Court's Conclusions of Law and the extent said findings and conclusions are included within Paragraph 2 of said judgment."[1]

The trial court in a formal order denying the motion for new trial or to alter and amend the judgment made the following conclusions:

". . . The principal thrust of defendants' argument seems to be that there was no evidence before the court to substantiate the court's finding that the activities subject to such fees or covered by the activity cards were integral parts of the overall educational program . . . . It therefore necessarily follows, argue the defendants, that those activities do not fall within the 'free public schools' and gratuitous education requirements of Section 2, Article IX of the Constitution of Colorado. This argument could be answered very easily by pointing out that when during the hearing, plaintiffs offered in evidence Exhibits A, B and C, all purporting to show the

---

[1] Paragraph 2 of Judgment:

"The plaintiffs have judgment against defendant school district in the amount of $99.22."

extent to which the so-called extracurricular activities were in fact a part of the overall school programs, counsel for the defendants conceded that such was the case.

"But beyond the fact of counsel's stipulation, there is indeed evidence in the record to support a finding that the non-academic activities, for which fees are charged, are a part of the educational programs . . . .

. . . .

"The defendants also argue that the court erred in declaring unconstitutional, at least by implication, that part of 123-30-18(2) C.R.S. 1963, as amended, which provides as follows:

'. . . miscellaneous fees may be collected on a voluntary basis as a condition of participation or attendance at a school sponsored activity or program not within the academic portion of the educational program.' "

The defendants had no doubt about the issue on appeal. The opening paragraph of their brief reads:

"The issue before this court is whether or not the trial court committed error in holding that C.R.S. 1963, 123-30-18(2), as amended, is unconstitutional in permitting the collection of miscellaneous fees on a voluntary basis from indigent students for activities or programs not within the academic portion of the educational program."

It seems clear to me a justiciable issue is before us. I would answer the problem briefly in this manner.

Although the trial court based its conclusion, in part, on the indigency of the plaintiffs, I would conclude that the nature of the educational activity is controlling. This is so because of the constitutional mandate for the establishment and maintenance of a thorough and uniform system of free public schools wherein *all residents,* between the ages of six and twenty-one years, *may be educated gratuitously.* If the activities in issue constitute part of the education contemplated by the constitution, then they must be furnished gratuitously to all between the ages of six and twenty-one years.

The general assembly is clothed with plenary power to

legislate for all purposes of civil government. This power is subject only to the restraints of the United States and Colorado Constitutions. Unlike the United States Constitution, the Colorado Constitution serves as a limitation on the power of the general assembly rather than as a grant of legislative authority. *Alexander v. People,* 7 Colo. 155, 2 P. 894 (1883). The general assembly may expand the rights and liberties secured by the Colorado Constitution, but the constitution guarantees that fundamental values may not be eroded by legislative action. *In re Kindergarten Schools,* 18 Colo. 234, 32 P. 422 (1893).

The question resolves itself into this: Does the education which is to be provided gratuitously under the constitution include both academic and non-academic programs?

In considering the school district's authority to collect activities fees, it is well settled that the governing body of a school district has only those powers expressly conferred upon it by statutory or constitutional provisions or such powers necessarily incidental to the conferred powers. *Big Sandy School District v. Carroll,* 164 Colo. 173, 433 P.2d 325 (1967); *Union High School District No. 2 v. Paul,* 105 Colo. 93, 95 P.2d 5 (1939); *School District No. 98 of Adams County v. Pomponi,* 79 Colo. 658, 247 P. 1056 (1926). In authorizing school districts to collect miscellaneous fees the general assembly limited its grant of authority to the collection of such fees for activities and programs "not within the academic portion of the *educational program.* " By its very grant of authority to collect the fees in question in this case, the general assembly recognized the educational nature of non-academic school sponsored activities and programs.

Because of the derivative nature of the school district's power to collect the fees authorized by 1965 Perm. Supp., C.R.S. 1963, 123-30-18(2), I conclude that the fees in question may only be assessed for activities and programs which are part of the educational program of the school district. Otherwise the collection of such fees is *ultra vires.* *Union High School District No. 2 v. Paul, supra.*

Further support for the proposition that non-academic, school sponsored activities and programs are educational in nature is found in the evidence presented to the trial court.

On the record in this case, I would have to affirm the trial court. In view of my interpretation of the constitutional language of Article IX, Section 2, I would go further than the trial court and hold that the entire educational program is required to be provided to all students "gratuitously."[2] This does not mean that every non-academic activity carried on at the school house must necessarily be a portion of the educational program. If the legislature authorizes a school district to collect fees for non-academic activities which are not a part of the educational program and a school district determined, for instance, that attendance at a football game was not educational, I would abide by the legislative determination.

To this extent I think I am in agreement with the Chief Justice. However, I do not think posture of the present case permits such a conclusion. I, of course, would limit my concession in this respect to *reasonable* determinations of what is non-educational.

I would affirm.

---

[2] Although I believe that this conclusion can be supported by the plain language of the constitution, substantial support for this position may be found in the textual changes made in Article IX, Section 2, as it worked its way through the Constitutional Convention. *See* PROCEED-INGS OF THE CONSTITUTIONAL CONVENTION. *See also* HALE, GOVE, and SHATTUCK, EDUCATION IN COLORADO, 1861-1885 (1885).