Bruce W. BARBOUR, Plaintiff–Appellee and Cross–Appellant,

v.

HANOVER SCHOOL DISTRICT NO. 28, County of El Paso, State of Colorado, Defendant–Appellant and Cross–Appellee.

No. 05CA1573.

Colorado Court of Appeals.

June 1, 2006.

Certiorari Granted Nov. 27, 2006.

Charles F. Kaiser, Martha R. Houser, Gregory J. Lawler, Cathy L. Cooper, William J. Maikovich, Sharyn E. Dreyer, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Semple Miller Mooney & Farrington, P.C., Steven Everall, Patrick B. Mooney, Michelle M. Paulin, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

DAVIDSON, Chief Judge.

In this action concerning the Teacher Employment, Compensation, and Dismissal Act, § 22–63–101, et seq., C.R.S.2005 (TECDA), defendant, Hanover School District No. 28 (district), appeals from a judgment entered in favor of plaintiff, Bruce W. Barbour, awarding reinstatement, back pay, and other damages for the district's failure to comply with the requirements of § 22–63–203(3), C.R.S.2005, concerning notice of nonrenewal of probationary teacher contracts. Barbour cross-appeals, alleging error in certain aspects of the court's damages award. We affirm.

## I. Background

The relevant facts are undisputed. Barbour was employed as a probationary teacher in the district during the 2002–2003 and 2003–2004 school years.

On April 7, 2004, the district's board of education (board) held a public "special board meeting." After an hour, the board moved into a two-hour closed "executive session."

Although the topics of discussion were not publicly announced and minutes of the session were not taken, the closed session discussion included renewal of teacher contracts. During the discussion, the board members decided to renew the contracts of all teachers but Barbour. The board then directed the district superintendent to send Barbour written notice that his contract would not be renewed for the following year.

The next day, the superintendent sent a letter to Barbour entitled, "Letter of Intent." The letter, in its entirety, stated:

I regretfully must inform you that the Hanover Board of Education does not plan to offer you a teaching contract for the 2004–2005 school year.

On May 26, the board convened for another public meeting. Again, without announcing topics to be discussed, the board entered into an executive session during which the members again discussed the renewal of teacher contracts. Subsequently, the board returned to the public portion of the meeting and voted to reissue all teacher contracts for the 2004–2005 school year except for Barb-

our's. The board did not provide to Barbour any form of written notice of this action.

On August 19, Barbour filed this action against the district, alleging in his complaint that the district had violated the TECDA by failing to comply with the notice provision of § 22–63–203(3). The trial court granted Barbour's motion for partial summary judgment on the issue of the district's liability and subsequently held a bench trial on the issue of damages. The court awarded Barbour back pay for the amount he would have earned in the 2004–2005 school year, reimbursement and indemnification for two federal grants he had received, and reinstatement for the 2005–2006 school year as a probationary teacher at the "master's degree plus 36 academic credits" pay level.

The district challenges both the partial summary judgment on liability and the damages award. Barbour cross-appeals from the portion of the judgment ordering him reinstated as a probationary, rather than as a nonprobationary, teacher and awarding back pay according to the "master's degree plus 36 academic credits" pay level, rather than the "master's degree plus 48 academic credits" pay level.

## II. Standard of Review

■ Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999). Factual disputes will not defeat an entry of summary judgment so long as the disputed facts are not material to the outcome of the case. *See Raygor v. Bd. of County Comm'rs*, 21 P.3d 432, 435 (Colo.App.2000). We review a grant of summary judgment de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298–99 (Colo.2003).

■ A trial court's factual determinations made after a bench trial will not be disturbed if supported by the record. *People v. Dover*, 790 P.2d 834, 835 (Colo.1990).

## III. Liability Under § 22–63–203(3)

■ The district first contends that the trial court erred in determining that it failed to comply with the notice requirements of § 22–63–203(3). We disagree.

As pertinent here, § 22–63–203(3) provides:

A probationary teacher employed by a school district on a full-time basis shall be deemed to be reemployed for the succeeding academic year at the salary that the probationary teacher would be entitled to receive under the general salary schedule, the teacher salary policy, or the combination schedule and policy, whichever is appropriate, *unless the board causes written notice to the contrary to be given to said teacher on or before June 1* of the academic year during which said teacher is employed.

(Emphasis added.)

■ If the board fails strictly to comply with the notice requirements of § 22–63–203(3), the probationary teacher is automatically reinstated for an additional school year. *Sch. Dist. RE–11J v. Norwood*, 644 P.2d 13 (Colo.1982) (notice of nonrenewal was insufficient when received by teacher one day after statutory deadline); *Wooten v. Byers Sch. Dist. No. 32J*, 156 Colo. 89, 396 P.2d 964 (1964) (written notice of nonrenewal after the statutory deadline was insufficient even though teacher was provided with oral notice before the deadline); *Day v. Prowers County Sch. Dist. RE–1*, 725 P.2d 14 (Colo.App.1986) (written notice was insufficient when it did not unequivocally state that teacher's contract would not be renewed).

■ Although generally the TECDA is to be construed in favor of the board, *see Marzec v. Fremont County*, 142 Colo. 83, 86, 349 P.2d 699, 701 (1960), it is the district's burden to prove that it provided a statutorily adequate notice pursuant to § 22–63–203(3). *See Wooten v. Byers Sch. Dist. No. 32J*, *supra*, 156 Colo. at 92, 396 P.2d at 966.

In its order granting partial summary judgment to Barbour, the trial court determined that, based on the undisputed facts, the April 8 letter to Barbour was "legally insufficient" under § 22–63–203(3) because it

did not result from a properly held public meeting under the provisions of the Colorado Open Meetings Law, § 24–6–402, C.R.S.2005. Therefore, the trial court concluded, the board did not "cause" written notice of non-renewal to be given as required by § 22–63–203(3).

The district contends that the trial court was wrong. Its primary argument is that although pursuant to the Open Meetings Law "it is necessary that a formal vote be taken at a public meeting to properly effectuate the nonrenewal of a probationary teacher, [the] giving of the notice is ancillary to that formal action." Thus, the district posits, the board need not take formal action to direct, or "cause," written notice to be given to probationary teachers. Instead, according to the district, the board's formal vote may follow the statutory notice. Therefore, the district contends, the trial court erred in its determination that the letter of intent sent to Barbour subsequent to it's board's April 7 meeting, but prior to the May 26 meeting, was insufficient. We disagree.

### A. Discretionary Decision Requiring Formal Action

■ School boards are creatures of statute. *See* §§ 22–32–103, 22–32–110, C.R.S. 2005. Therefore, they can validly act only within the confines of their statutorily prescribed authority. *See Adams County Sch. Dist. No. 50 v. Dickey,* 791 P.2d 688, 691–94 (Colo.1990).

The General Assembly granted school boards authority over teacher employment decisions, including the termination of any personnel. *See* § 22–32–110. Furthermore, the General Assembly specifically vested only school boards with the power to nonrenew a probationary teacher's contract. *See* § 22–63–203(3) (a probationary teacher is deemed to be reemployed "unless the board causes written notice to the contrary to be given to said teacher").

Such employment decisions are not merely ministerial or administrative, but rather involve the exercise of considerable discretion. *Big Sandy Sch. Dist. No. 100–J v. Carroll,* 164 Colo. 173, 176, 433 P.2d 325, 328 (1967), *overruled on other grounds by Normandy*

*Estates Metro. Recreation Dist. v. Normandy Estates, Ltd.,* 191 Colo. 292, 553 P.2d 386 (1976). A nonministerial act constitutes formal action by a board. *Cf. Gavend v. City of Thornton,* 165 Colo. 182, 186, 437 P.2d 778, 780 (1968) (ministerial acts do not require formal action by the board). Accordingly, nonrenewal of a teacher's contract always is a formal board action.

### 1. Open Meetings Requirements

The Open Meetings Law, § 24–6–402, prescribes the procedures by which official bodies, including school boards, must conduct their meetings and make decisions. *See Bagby v. Sch. Dist. No. 1,* 186 Colo. 428, 432, 528 P.2d 1299, 1301 (1974).

Although meetings of three or more members, or a quorum, must generally be open to the public, *see* § 24–6–402(2)(b), C.R.S.2005, a school board may proceed in a nonpublic executive session if it complies with the requirements of §§ 24–6–402 and 22–32–108(5), C.R.S.2005. *See* § 24–6–402(3)(a), C.R.S. 2005 (listing conditions for proceeding in executive session). However, a board may not adopt any proposed policy, position, resolution, rule, regulation, or formal action at an executive session. *See* § 22–32–108(5). When a school board fails to comply with the requirements of the Open Meetings Law, its actions are invalid. *See* § 24–6–402(8), C.R.S.2005.

### 2. Informal Direction to Superintendent

Here, the district admitted in its opening brief: "The Board discussed the renewal of teaching contracts on or about April 7, 2004 in executive session. [It] then directed [the superintendent] to send Barbour written notice that his contract would not be renewed for the following year." On these facts, the trial court concluded that this action was a "formal" decision by the board made improperly during an executive session in violation of the Open Meetings Law and, therefore, was ineffective to "cause" notice of nonrenewal to be sent to Barbour.

To the contrary, the district argues, the board's action was valid because it was not a formal decision, but instead, "the board in

fact caused notice to be given by informally directing the superintendent of schools to give notice." However, a school board's directing the superintendent to send a nonrenewal letter to a probationary teacher is equivalent to the board's deciding to terminate that teacher. *See* § 22–63–203(3) (nonrenewal is effectuated through giving of notice). And, as discussed, a school board cannot make a teacher hiring or firing decision "informally." Thus, if, as the district suggests, the board "informally" directed that notification of contract nonrenewal be sent to Barbour, that is, without a formal board decision to nonrenew, for purposes of compliance with § 22–63–203(3), such action would have been meaningless.

### 3. Invalid Action During Executive Session

Thus, the district's contentions to the contrary notwithstanding, we agree with the trial court that the board's attempt to nonrenew Barbour's contract was formal action improperly taken during an executive session and, therefore, was invalid. Consequently, we conclude, the board had no authority to direct the transmission of such a document to Barbour and, accordingly, as the trial court correctly determined, the letter advising Barbour of that decision was of no effect. *See* § 24–6–402(7), C.R.S.2005; *Gavend v. City of Thornton, supra,* 165 Colo. at 186, 437 P.2d at 780 (superintendent's action was not a valid act of the board and therefore could not serve as basis for board's compliance with statute); *Kerns v. Sch. Dist. No. 6,* 515 P.2d 121 (Colo.App.1973) (not published pursuant to C.A.R. 35(f)) (procedurally deficient termination decision of school board was ineffective to authorize sending letter of nonrenewal to probationary teacher); *Robb v. Sch. Dist. No. RE 50(J),* 28 Colo.App. 453, 459, 475 P.2d 30, 32 (1970); *see also Lanes v. State Auditor's Office,* 797 P.2d 764 (Colo. App.1990) (agency act lacking formal action is invalid).

### B. No Ratification

■ However, relying on *Kerns v. School District No. 6, supra,* 515 P.2d at 123, the district argues that, even if the actions of the board at the April 7 executive session were ineffective, the formal vote taken at the board's May 26 special meeting "cured" the defects. We disagree.

As we read these statutes, nothing in the TECDA or the Open Meetings Law reflects a legislative intent to authorize the subsequent "rubber stamping" of previous defective decisions. *See Bagby v. Sch. Dist. No. 1, supra,* 186 Colo. at 434, 528 P.2d at 1302 (public has not truly participated in a public meeting if the discussion was held in private and the public only witnessed the formal vote); *see also Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004).

In any event, even if we were to assume that "after the fact" ratification "cures" prior invalid action, under *Kerns,* such ratification must be an "explicit and unequivocal manifestation of the board's intention to ratify [its] prior unauthorized acts." *Kerns v. Sch. Dist. No. 6, supra,* 515 P.2d at 123 (in rejecting argument that school board's formal vote after an insufficient notice of nonrenewal ratified otherwise ineffective notice, division observed that the board had not made specific reference to its prior unauthorized acts or to the teachers whose contracts were nonrenewed). Here, the minutes of the May 26 special board meeting do not specify that the board's intention was to ratify its insufficient notice to Barbour.

Moreover, as discussed above, the board must render a valid decision to nonrenew a probationary teacher's contract in order to "cause" the sending of a sufficient notice. Thus, regardless whether the board's formal vote to nonrenew taken at its May 26 meeting validated its prior invalid decision to nonrenew Barbour's contract, it is undisputed that the board did not provide Barbour with written notice of that decision. *See* § 22–63–203(3).

### C. Strict or Substantial Compliance

Nevertheless, the district argues, by sending to Barbour, prior to the statutory deadline, a "premature" notice of nonrenewal on which the board later formally voted, the board substantially complied with the statutory notice provision. And, the district con-

tends, substantial, not strict, compliance is sufficient.

However, even assuming, arguendo, that the board's actions constituted substantial compliance, as discussed, Colorado law is unequivocally to the contrary. *See Sch. Dist. RE–11J v. Norwood, supra; Wooten v. Byers Sch. Dist. No. 32J, supra; Day v. Prowers County Sch. Dist. RE–1, supra.*

The district suggests that, notwithstanding this authority, the "modern trend" is to apply a substantial compliance standard to statutory procedural notice requirements. However, as Barbour points out, the Colorado cases cited by the district to support its argument involve provisions wholly unrelated in both language and purpose to the statutory scheme at issue here.

Indeed, the rationale underlying these other cases—to remove a trap for innocent tort victims, workers' compensation claimants, or unwary private citizens injured by a governmental entity—is inapplicable to a public entity such as the board, which, as the trial court noted, has the continuing service of legal advisors available for precisely these sorts of situations. *See, e.g., Friedland v. Travelers Indem. Co.,* 105 P.3d 639 (Colo. 2005) (applying standard of prejudice to insurer's notice requirement in order to protect innocent tort victims and insureds who have unequal bargaining power); *Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253 (Colo.2003) (involving governmental immunity provision in which substantial compliance with notice provision prevents the statute from becoming a trap for unwary individual private citizens); *Woodsmall v. Reg'l Transp. Dist.,* 800 P.2d 63 (Colo.1990) (same); *EZ Bldg. Components Mfg., LLC v. Indus. Claim Appeals Office,* 74 P.3d 516 (Colo.App. 2003) (workers' compensation provision).

## IV. Relief for Violation of § 22–63–203(3) and for Breach of Contract

The district contends that the trial court erred in its awards of reemployment, back pay without mitigation, reimbursement, and indemnification. In his cross-appeal, Barbour contends that the trial court wrongly determined his probationary status and also

the amount of back pay to which he is entitled. We find no error.

### A. Relief Under § 22–63–203(3)

Based on the violation of § 22–63–203(3), the trial court ordered the district to reemploy Barbour for a single year and also awarded Barbour full back pay and benefits without mitigation.

#### 1. Reemployment

At the time of the board's invalid nonrenewal of Barbour's contract, Barbour had been employed in the district as a probationary teacher for two years. The trial court determined that, pursuant to § 22–63–203(3), Barbour was entitled to reemployment as a probationary teacher for one additional year. However, because the 2004–2005 school year was over at the time of the court's ruling, the court ordered reemployment to occur for the 2005–2006 school year. The court disagreed with the district's argument that, because the board had formally voted in September 2004 and again in May 2005 not to renew Barbour's contract, the court was precluded from ordering the one-year reinstatement. On appeal, the district again argues that the court's order of reinstatement was error. We disagree.

Section 22–63–203(3) provides that unless the board gives proper notice of nonrenewal, a probationary teacher "shall be deemed to be reemployed for the succeeding academic year."

Pursuant to the unequivocal terms of the statute, Barbour was automatically reemployed for the 2004–2005 school year following the invalid attempt at nonrenewal, and, because the 2004–2005 school year had already passed by the time the trial court ruled, it properly ordered the one-year term of reemployment to occur during the 2005–2006 school year. *See Wooten v. Byers Sch. Dist. No. 32J, supra,* 156 Colo. at 91, 396 P.2d at 965 (when school fails to give proper statutory notice to a probationary teacher, the mandatory language of the statute requires automatic reemployment for the following school year); *Sch. Dist. RE–11J v. Norwood,* 644 P.2d at 15–17 (same); *Day v.*

*Prowers County Sch. Dist. RE–1, supra* (same).

We disagree with the district's argument that the board's September 2004 and May 2005 resolutions to nonrenew Barbour's contract divested Barbour of any right to reemployment for the 2005–2006 school year and for all future school years. By the plain terms of the statute, Barbour's right to one year of reemployment as a probationary teacher vested on June 1, 2004. Thus, the subsequent actions of the board in its September 2004 and May 2005 resolutions had no effect on the single year of reemployment that had already vested. *See* § 22–63–203(3) (a probationary teacher shall be deemed reemployed for "the succeeding academic year" unless the board gives proper notice to the contrary "on or before June 1 of the academic year" during which the teacher is employed).

We note, however, that the court's order of reemployment has been stayed during this litigation, Barbour has not yet received his year of reemployment, and the 2005–2006 school year is now about to end. Accordingly, we agree with Barbour that the case must be remanded to the trial court to order Barbour's one-year reemployment to occur during the 2006–2007 school year.

■ But we disagree with Barbour's argument on cross-appeal that the trial court must order the board to reemploy him as a tenured teacher. To the contrary, Barbour is not entitled to "credit" for the 2004–2005 school year. Instead, because he was employed with the district for two probationary years when the board attempted to nonrenew his contract, he is entitled to be reinstated only for one more probationary year. *See* § 22–63–203(1), C.R.S.2005 (teachers remain on probationary status for three years; after that point, teachers are entitled to the benefits and security that come with nonprobationary status).

## 2. Back Pay and Benefits

■ In addition to the single year of reemployment, the trial court awarded Barbour full back pay and fringe benefits calculated from June 1, 2004, for the district's violation of § 22–63–203(3). The court did not reduce the award to account for Barbour's mitigation because it concluded that, based on *School District RE–11J v. Norwood, supra*, a teacher whose employment is wrongfully nonrenewed in violation of § 22–63–203(3) is entitled to reemployment, back pay, and fringe benefits, without regard to mitigation.

*Norwood* concerned a probationary teacher whose contract had been wrongfully nonrenewed in violation of an earlier version of § 22–63–203(3), Colo. Sess. Laws 1967, ch. 435, § 123–18–10 at 979 (also codified as § 22–63–110). Pursuant to the reemployment language of that statute—which is identical to the current version at issue here—the teacher sought reemployment as a probationary teacher. She also sought back pay and fringe benefits for the period between her wrongful nonrenewal and her reinstatement. The trial court ordered her reemployment for another year and also awarded her full back pay and benefits. Emphasizing the difference between an action grounded on the statutory automatic reemployment provisions and a tort action for wrongful dismissal, the supreme court affirmed the trial court's order, stating that the "[t]he award of back pay and fringe benefits follows by operation of law upon … reinstatement." *Sch. Dist. RE–11J v. Norwood, supra,* 644 P.2d at 18. The court refused to apply the common law damages formula in which the measure of damages is "the difference between the teacher's salary and her earnings in mitigation during the period of wrongful discharge." *Sch. Dist. RE–11J v. Norwood, supra,* 644 P.2d at 18.

The district argues that the trial court misread *Norwood* because, the district asserts, all damage awards are subject to the common law rule of mitigation and anything to the contrary in *Norwood* was simply dictum. The district also relies on *Robb v. School District No. RE 50(J), supra,* a breach of contract case, in which the court reduced the teacher's damages by his earnings in mitigation. Additionally, the district argues that Barbour will wrongfully receive a windfall if he is reemployed and receives full back pay without mitigation. *Cf. Dept. of Health v. Donahue,* 690 P.2d 243, 250 (Colo.

1984) (teacher received back pay with mitigation after she was denied her statutory right to a predisciplinary meeting); *Lanes v. O'Brien,* 746 P.2d 1366, 1373 (Colo.App.1987) (employee who was wrongfully terminated in violation of Whistleblower Act was awarded damages with mitigation).

We do not agree with the district's argument that we must read into the statute a duty to mitigate. *Norwood* holds that the award of back pay is an unqualified statutory entitlement, not an award of damages for the tort of wrongful dismissal or a breach of contract.

However, were we writing on the proverbial clean slate, unlike the court in *Norwood,* we would not interpret § 22–63–203(3) to entitle a wrongfully nonrenewed teacher to *both* remedies. By the statute's plain terms, the remedy provided to a wrongfully nonrenewed teacher is limited to a single year of reemployment at a concomitant level of pay. To us, this means, conversely, that if a district for some reason does not provide to the affected teacher the requisite single year of reemployment, then the teacher is entitled to its equivalent, that is, back pay and fringe benefits equal to the amount he or she was entitled to receive for the year the employment was nonrenewed.

In any event, *Norwood* expressly interpreted the reemployment statute at issue here and is precisely on point. Therefore, we are bound by it. Moreover, because *Norwood* 's discussion of appropriate relief under the automatic reemployment statute was necessary to the resolution of the case, it was not dictum. *See Z.J. Gifts D–2, L.L.C. v. City of Aurora,* 93 P.3d 633, 640 (Colo.App. 2004) (discussion not necessary to decision is dicta). Accordingly, we must conclude that Barbour is entitled to full back pay and fringe benefits upon reemployment. Furthermore, Barbour's back pay is not subject to mitigation by the amount he earned while teaching in another district. *See Sch. Dist. RE–11J v. Norwood, supra,* 644 P.2d at 18.

■ But, contrary to his argument on cross-appeal that he is entitled to receive back pay on the "master's degree plus 48 credits" level, Barbour is entitled to receive back pay only on the "master's degree plus 36 credits" level.

■ A probationary teacher is to be reemployed "at the salary that the probationary teacher would be entitled to receive under the general salary schedule." Section 22–63–203(3). School districts must "place each teacher in the school district on the salary schedule at a level at least commensurate with, but not limited to, each teacher's education, prior experience, and experience in the district as provided in the salary schedule." Section 22–63–401(2), C.R.S.2005. However, school districts have broad discretion in fixing teacher salaries. *See Osborn v. Harrison Sch. Dist. No. 2,* 844 P.2d 1283, 1285 (Colo.App.1992).

Here, the trial court found that the school district properly exercised its discretion to compensate Barbour at the "master's degree plus 36 academic credits" for the two years he was employed there. According to the interim superintendent, the district uses academic credits as a measure of the teacher's abilities, and, as the trial court found, Barbour had not completed any additional credits since April 2004, when his contract was wrongfully nonrenewed. Thus, the trial court determined that the full back pay which Barbour is entitled to receive in his third year should be set at the "master's degree plus 36 credits" level. Because the record supports the court's determination, we discern no error.

### B. Relief for Breach of Contract

Based on Barbour's breach of contract claim, the trial court ordered the district to compensate Barbour for his additional commuting costs and lost grant money, and also to indemnify him for other grant money that he may be required to repay to the federal government. We perceive no error in these awards.

#### 1. Troops to Teachers Grant

■ First, we conclude that the trial court properly ordered reimbursement for Barbour's loss of the federal Troops to Teachers grant.

##### a. Hearsay

The district asserts that the only evidence supporting Barbour's claim that his job loss

resulted in the loss of the Troops to Teachers grant was inadmissible hearsay testimony. We disagree.

Barbour received a Troops to Teachers grant from the federal government because Hanover Junior–Senior High School (the school with which he was wrongfully denied reemployment) qualified as "low income." He testified that he did not receive the grant while teaching at his new school because it did not qualify as low income. He said he "checked to see if it qualified." The district objected to the admission of the testimony, arguing that it was hearsay. The court disagreed and admitted the evidence.

With certain exceptions, hearsay evidence is inadmissible. CRE 802. Here, however, Barbour's testimony that his new school did not qualify as low income was based on Barbour's personal knowledge and was not a statement made by someone other than Barbour. Therefore, it was not hearsay. CRE 801 (hearsay is a statement made by someone other than the testifying witness that is offered to prove the truth of the matter asserted). Because the district did object on any other grounds, we do not consider whether the statement was otherwise subject to challenge for lack of foundation. *See, e.g., People v. Kruse,* 839 P.2d 1, 3 (Colo.1992) (failure to make a timely and sufficient objection during trial constitutes a waiver of that ground on appeal).

### b. Foreseeability

■ The district also argues that Barbour is not entitled to damages for loss of the Troops to Teachers grant because that loss was not foreseeable by the parties when they entered into the contract. Again, we disagree.

■ In a breach of contract action, the wronged party is entitled to damages that flow naturally from the breach of contract, as well as other foreseeable damages that were within the reasonable contemplation of the parties at the time of contracting. *See, e.g., Giampapa v. Am. Family Mut. Ins. Co.,* 64 P.3d 230, 237 n. 3 (Colo.2003).

Here, to receive the Troops to Teachers grant, a teacher must submit an application

to the federal government. Thus, these damages would not naturally flow from an ordinary teaching contract. However, the record shows that a school administrator for the district signed documents in November 2003 from the Troops to Teachers program confirming that Hanover qualified as "high needs" under that program. Thus, because Barbour's contract was automatically renewed by operation of § 22–63–203(3) on June 1, 2004, the trial court properly determined that such damages were reasonably foreseeable at least when Barbour's contract was automatically renewed.

### 2. Commuting Costs

■ The district also challenges the trial court's award of damages for the additional commuting costs Barbour incurred in traveling to his new teaching job. It argues that Barbour is entitled to commuting costs only if mitigation is applied to his award of back pay. We disagree.

As discussed, Barbour is entitled to full back pay and fringe benefits without regard to mitigation pursuant to the interpretation of § 22–63–203(3) that is binding on us. *See Sch. Dist. RE–11J v. Norwood, supra,* 644 P.2d at 17–18. Moreover, in addition to Barbour's § 22–63–203(3) claim, the trial court ruled in his favor on his breach of contract claim, for which, as also discussed, he is entitled to reasonably foreseeable damages. *See, e.g., Giampapa v. Am. Family Mut. Ins. Co., supra,* 64 P.3d at 237 n. 3. Here, because commuting costs to a replacement job naturally flow from the breach of an employment contract, the court's award of additional commuting expenses was not error. *See Jensen v. Dalton,* 9 Cal.App.3d 654, 88 Cal.Rptr. 426, 428 (1970) (commuting costs were reasonably foreseeable consequence of breach).

### 3. Teachers in Residence Grant

■ The district argues that the trial court erred in ordering it to indemnify Barbour for his obligation to repay the federal government for a grant he received through the Teachers in Residence program. The district asserts that Barbour is only entitled to indemnification once the federal government actually demands that he repay the

grant, which it has not yet done. Again, we disagree.

Indemnification includes not only the act of reimbursing, but also the promise to reimburse for a loss suffered because of the indemnitor's act or default. *See Black's Law Dictionary* 784 (8th ed.2004).

Here, it is undisputed that Barbour is legally obligated to repay the federal government for the third year of his Teachers in Residence grant. Moreover, the district does not dispute that Barbour's obligation to repay the grant was caused by the district's wrongful nonrenewal. Thus, the trial court did not err in requiring the district to indemnify Barbour for the grant money he owes to the federal government, should the government try to collect at some future date.

The judgment is affirmed.

PLANK * and NEY *, JJ., concur.