## No. 22244.

Asphalt Paving Co., a corporation, Jefferson Transit Mix, Inc., Table Mountain, Inc., Mobile Concrete, Inc., and Westway Motor Freight, Inc. *v.* The Board of County Commissioners of the County of Jefferson and Duke W. Dunbar, as Attorney General of the State of Colorado.

(425 P.2d 289)

Decided March 27, 1967.

256

F. RICHARD HITE, for plaintiffs in error.

CONRAD GARDNER, ROBERT K. WILLISON, RONALD LEE COOKE, for defendant in error Board of County Commissioners of Jefferson County.

J. FRED SCHNEIDER, for Colorado State Association of County Commissioners, amicus curiae.

DUKE W. DUNBAR, Attorney General, GEORGE L. ZOELLNER, Chief Highway Counsel, Assistant Attorney Gen-

eral, RICHARD W. PHILLIPS, Assistant Attorney General, for defendant in error Duke W. Dunbar.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS writ of error is directed to a declaratory judgment action originally brought in the trial court. The case was tried to the court on an agreed statement of facts after which written findings of fact and conclusions of law were made. A judgment was then entered in favor of the defendants in error who were defendants in the trial court. We shall refer to the parties by name or as they appeared in the trial court.

The judgment upheld the validity of three separate resolutions, previously adopted by the Board of County Commissioners of Jefferson County, which prohibited the operation of through traffic by trucks and other commercial vehicles — except pick-up trucks and trucks used for local delivery — upon certain county roads in essentially residence-developed areas of the county. We note here that the plaintiffs' operations consist primarily of hauling large amounts of sand, gravel and other heavy loads from their places of business to distant points.

It is asserted that the trial court erred because:

(1) The Board is not a "local authority" as defined by C.R.S. 1963, 13-1-1(30) and so did not have the powers delegated by the legislature to local authorities, under C.R.S. 1963, 13-5-128(3), to adopt traffic regulations; additionally, that Boards of County Commissioners cannot lawfully exercise any police powers;

(2) That even if C.R.S. 1963, 13-5-128(3) does apply to Boards of County Commissioners, the statute is unconstitutional in that it unlawfully delegates legislative power to an administrative agency because it fails to

set forth necessary standards to govern any regulations adopted thereunder;

(3) That, even if these regulations were lawfully adopted, they constitute special legislation and. are discriminatory as to these plaintiffs;

(4) That the regulations, if otherwise valid, nevertheless, deprive the plaintiffs, without due process of law, of a property right to use the public county roads to haul their products; and,

(5) Even if the Board had the power to adopt reasonable regulations as to vehicular traffic, by so doing here the Board created a crime, and this it had no power to do.

We will treat the issues raised seriatim.

I.

■■ Was the Board a "local authority" with power to adopt reasonable traffic regulations upon the county highways in question; and, can the Board exercise certain police powers? For the reasons hereinafter set forth the answer to these two questions is in the affirmative.

C.R.S. 1963, 13-1-1(30) defines a "local authority" as:

"* * * every county, municipal, and other local board or body having authority to adopt local police regulations under the constitution and laws of this state."

■ The trial court held that this Board of County Commissioners falls within the above statutory definition. The plaintiffs, however, urged it erred in so holding because such boards, generally speaking, are merely administrative agencies of the state for purposes of political organization and local administration, without any power to adopt *police* regulations. See *Town Commissioners of Centerville v. County Commissioners of Queen Anne's County*, 199 Md. 652, 87 A.2d 599 (1952), and 14 Am. Jur., *Counties* § 5. Such a contention, though, ignores the corrollary expressed in *Farnik v. Commissioners*, 139 Colo. 481, 341 P.2d 467 (1959) as well as in 14 Am. Jur., *supra*, to the effect that counties also possess

powers which have been expressly delegated to them or which can be reasonably implied from such express grants. The trial court, by its ruling, rejected the plaintiffs' contention as applied to present-day operations of counties. We agree with this ruling.

The fact that the term "county" was included in C.R.S. 1963, 13-1-1(30) along with "municipal" units indicates that the legislature intended such county governmental units, functioning through their Boards of County Commissioners, to have at least certain police powers. The provision in the act relating to "other local board or body" can apply only to the numerous units of local government other than counties and municipalities, which overlap our state in profusion.

██ It seems to us that the legislature can and does, at times in Colorado, delegate limited police and legislative powers to local governmental units. The rule as to the latter is succinctly set forth in 16 Am. Jur. 2d, *Constitutional Law* § 250 where it is stated:

"It is a well-settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope."

The statute under which this Board acted as authority to adopt "through truck" regulations, is C.R.S. 1963, 13-5-128(3), which reads:

"Local authorities, with respect to highways under their jurisdiction, may also, by ordinance or resolution, prohibit the operation of trucks or other commercial vehicles, or may impose limitations as to the weight thereof, on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on such highways."

In addition, C.R.S. 1963, 36-1-7(9) grants to Boards of County Commissioners the power:

"To lay out, alter or discontinue any road running into or through such county, and also to perform such

other duties respecting roads as may be required by law."

And, C.R.S. 1963, 13-5-7 provides that:

"\* \* \* local authorities with respect to streets and highways under their jurisdiction and within the *reasonable* exercise of the police power, \* \* \*"

may regulate non-state highway streets (with certain exceptions) in various specified ways including in subsection (g) the "Regulating (of) the operation of vehicles"; and further that they may restrict "\* \* \* the use of highways as authorized in sections 13-5-118 to 13-5-129." (Emphasis added.)

In our view, C.R.S. 1963, 13-5-128(3) allowed the Board to adopt the disputed resolutions since we have held *supra* that it is a "local authority" under C.R.S. 1963, 13-1-1(30).

It is worth noting, at this point, that in Colorado our legislature, as government has grown more complex, has extended its reliance on Boards of County Commissioners to carry out, on a local level, local governmental functions where it has deemed such necessary. For example, in addition to the statutes here under attack, in the past, counties have been delegated the following powers, among others, each of which requires the Board of County Commissioners to exercise certain police powers, viz.: to license and control dogs (C.R.S. 1963, 36-12-1); to adopt building regulations and restrictions (C.R.S. 1963, 36-15); to license and regulate public dance halls (C.R.S. 1963, 36-17); to issue liquor licenses (C.R.S. 1963, 75-2-9); to adopt zoning regulations (C.R.S. 1963, 106-2); to regulate roadside signs on county roads (C.R.S. 1963, 120-13-39-41); and to adopt, subject to state approval, lower prima facie speed limits on highways and roads located in unincorporated areas within their boundaries (Colo. Sess. Laws 1965, ch. 79). Several of these delegations of power have been heretofore upheld by this court, *e.g.* see *Baum v. Denver*, 147 Colo. 104, 363 P.2d 688 (1961)(zoning); *Dwyer v.*

*People,* 82 Colo. 574, 261 Pac. 858 (1927) (dance halls). In a different vein we held in *Lewis v. Lorenz,* 144 Colo. 23, 26, 354 P.2d 1008 (1960), which was a case involving the use of the roadside borrow pit for a water conduit, that "The statutes are conclusive of the fact that the county commissioners have the sole right to authorize *and control the use of the highway * * *."* (Emphasis added.)

▆▆ Generally speaking, in the absence of any constitutional prohibition, there is nothing illegal about a state legislature delegating powers local in nature to local governmental units, provided that the proper constitutional tests are met as to maintaining a separation of powers and non-abrogation of proper responsibility. See 16 Am. Jur.2d, *Constitutional Law* § 250; 16 C.J.S., *Constitutional Law* § 178. Although it has been said (see *Davis, Administrative Law Treatise,* § 2.07) that "The law of the state delegation (of power) differs substantially from the law of federal delegation," nevertheless, somewhat similar restrictions on the authority of the Congress to delegate powers to the executive branch of government seem to exist. See A.L.A. *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S. Ct. 837, 79 L.Ed. 1570 (1935) and *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S. Ct. 241, 79 L.Ed. 446 (1934).

## II.

▆▆ Does C.R.S. *1963,* 13-5-128(3) set forth adequate standards to meet the constitutional tests of separation of powers and non-abrogation of legislative functions? This answer is also in the affirmative.

Again referring to that statute, we note that the Board was granted the power to:

"* * * prohibit the operation of trucks or other commercial vehicles, or may impose limitations as to the weight thereof, on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on such highways."

A mere reading of the statute demonstrates that it sets forth certain guidelines for standards, *e.g.* the prohibition of trucks or other commercial vehicles and the imposition of weight limits. In addition, it should be noted that C.R.S. 1963, 13-5-7 expressly limits local authorities' actions in "Regulating the operation of vehicles" under subsection (g) thereof [which subsection in turn applies to 13-5-128(3)] to a "reasonable exercise of the police power." Thus, the further standard of reasonableness also applies assuming that the term "reasonable" is a sufficient definition of the power granted in this type of situation where the Board, by its resolutions, directed the posting of appropriate signs prohibiting through truck traffic.

Due to the varying situations which need to be regulated in our complex system of municipal, county, state and federal highways, obviously only local authorities are in a position to determine which non-federal or state streets in a residential area need to be regulated in a "reasonable" manner, or would know about these problems in any detail. It is essential that there be some control for the public welfare in certain neighborhoods of such matters as heavy truck weights which are unsuitable on certain types of roads, excessive noise, congestion and air pollution, as well as speed regulation. Thus, we hold that the term "reasonable" in the instant case, even though it might be deemed by some to be an indefinite, and thus unconstitutional, standard is a further sufficient legislatively created guide to enable the Board to exercise the authority delegated to control through traffic. For, as we stated in *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621, 627 (1965):

"* * * It is not necessary that the legislature supply a specific formula for the guidance of the administrative agency in a field where flexibility and adaption of the legislative policy to infinitely variable conditions constitutes the essence of the program. The modern tendency is to permit liberal grants of discretion to ad-

ministrative agencies in order to facilitate the administration of laws dealing with involved economic and governmental conditions. In other words, the necessities of modern legislation dealing with complex economic and social problems have led to judicial approval of broad standards for administrative action, *especially in regulatory enactments under the police power.* With respect to such types of legislation, detailed standards in precise and unvarying form would be unrealistic and more arbitrary than a general indefinite standard." (Emphasis added.)

See also *City of Lakewood v. Thormyer,* 171 Ohio St. 135, 168 N.E.2d 289 (1960); *Pressman v. Barnes,* 209 Md. 544, 121 A.2d 816 (1956); *Butler v. Commonwealth,* 189 Va. 411, 53 S.E. 2d 152 (1949). In *Pressman v. Barnes,* in connection with the denial of an allegation that a city traffic ordinance "failed to prescribe sufficient standards for the guidance of the Director of Traffic in adopting rules and regulations," it was stated in pertinent part at page 822 of 121 A.2d as follows:

"Generally, a statute or ordinance vesting discretion in administrative officials without fixing any standards for their guidance is an unconstitutional delegation of legislative power. But we also hold, as a qualification of the general rule, that where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid. (Citing cases) It is recognized that it would not always be possible for Legislature or City Council to deal directly with the multitude of details in the complex situations upon which it operates. (Citing case) The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration

of the laws as the complexity of governmental and economic conditions increases."

### III.

Do the resolutions constitute special legislation, and are they discriminatory as to these plaintiffs? We answer these questions in the negative.

The regulations apply equally to all trucks in transit through the designated residential areas except for those needed for local deliveries. This is a reasonable classification for the protection of the health and safety of such neighborhoods and is based upon a justifiable distinction which is not in the least arbitrary. Factually too, the Agreed Statement merely shows an inconvenience to the plaintiffs' vehicular operations because they now must utilize other somewhat longer routes to transport their products. It is not contended, for example, that they are denied any right of ingress or egress to their own properties.

### IV.

Have the plaintiffs been denied due process of law, or have they been deprived of any property right by the adoption of the resolution? This also must be answered in the negative.

Here there is no physical dispossession of plaintiffs' personal or real property. What is claimed is the purported invasion of a right. Though the public has a right to use public streets for purposes of passage, such does not mean that the public authorities cannot reasonably regulate such usage nor does it mean that there is a *carte blanche* right in the plaintiffs to use public ways for business purposes without any control or regulation. *E.g., Public Utilities Comm. v. Manley,* 99 Colo. 153, 60 P.2d 913 (1936); *Stephenson v. Binford,* 287 U.S. 251, 53 S. Ct. 181, 184, 77 L.Ed. 288 (1932); *Acosta v. County of Los Angeles,* 56 Cal.2d 208, 363 P.2d 473 (1961). Besides, there is a presumption of the regularity and constitutionality of statutes and duly enacted resolutions which these plaintiffs have not in the slight-

est overcome. *Baum v. Denver, supra; Greenberg v. Lee,* 196 Ore. 157, 248 P.2d 324 (1952); 16 Am. Jur.2d, *Constitutional Law* § 144; 37 Am. Jur., *Municipal Corporations* § 189.

As to plaintiffs' contention that they will have to pay additional ton-mile taxes because of the longer routes they must now follow — we also find no merit; for this is an inconvenience to be borne by all alike who are in the reasonably defined class.

■ These resolutions provide a reasonable restriction of movement over certain public county highways as determined to be necessary by a properly constituted public authority. All private property is held subject to the reasonable police powers of the state as exercised through properly constituted authorities; and, certainly all public property is held under no less a power. [Cf. *Radinsky v. Denver,* 159 Colo. 134, 410 P.2d 644 (1966)].

### V.

■ Has the Board created a crime, for the violation of its resolutions, when the power to create criminal liability rests solely in the legislature? The answer to this again is "no."

In the instant case the Board merely adopted resolutions, as permitted by legislative act. The penalties to be attached for a violation of the resolution were not set by the Board but by the legislature under C.R.S. 1963, 13-5-130(1) where it is stated that:

"It is a misdemeanor for any person to violate any of the provisions of this article, unless such violation is by this article, or by any other law of this state, declared to be a felony."

The authority delegated to the Board of County Commissioners in this case is not that of defining a crime or to make a law (Cf. *Prouty v. Heron,* 127 Colo. 168, 255 P.2d 755 (1953)] but is simply that of determining a set of facts upon which the statute in question will operate. *Prouty, supra;* and cf. *Olinger v. People,* 140

Colo. 397, 344 P.2d 689 (1959) and *Casey v. People,* 139 Colo. 89, 336 P.2d 308 (1959).

The judgment is affirmed.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE not participating.