**COLORADO AUTO & TRUCK WRECK-ERS ASSOCIATION, a Colorado Non-Profit Corporation; Southern Colorado Auto & Truck Wreckers Association, a Colorado Non–Profit Corporation; and A & A Auto Wrecking, Inc., a Colorado Corporation, Plaintiffs–Appellees,**

v.

**The DEPARTMENT OF REVENUE of the State of Colorado, Defendant–Appellant.**

**No. 79SA455.**

Supreme Court of Colorado.

Sept. 15, 1980.

Rehearing Denied Oct. 6, 1980.

647

James A. Beckwith, Fort Collins, Jim Travis Tice, Littleton, for plaintiffs–appellees.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Richard H. Forman, Asst. Atty. Gen., Denver, for defendant–appellant.

QUINN, Justice.

This appeal questions the constitutional validity of section 42–6–134 of the Certificate of Title Act, C.R.S.1973 (1979 Supp.), which requires the owner of a motor vehicle to surrender the certificate of title when his vehicle is "sold or otherwise disposed of as salvage", and Department of Revenue regulation 42–6–134(I)(iv), 1 C.C.R. 204–2, which defines this statutory term and establishes procedures for obtaining a salvage receipt upon surrender of the certificate of title.

Plaintiffs–appellees are Colorado Auto and Truck Wreckers Association, Southern Colorado Auto and Truck Wreckers Association, and A & A Wrecking, Inc. (appellees). The two associations consist of auto and truck salvage–yard operators, and A & A Wrecking, Inc., is a corporation engaged in the business of dealing in damaged motor vehicles. In proceedings for judicial review of agency action commenced in the district court under section 24–4–106(4), C.R.S.1973 (1979 Supp.), the appellees successfully challenged the constitutionality of the statute and the validity of the regulation promulgated thereunder by the executive director of the Department of Revenue (department). We reverse the judgment of the district court and uphold the constitutionality of section 42–6–134 and the validity of the regulation.

The General Assembly amended section 42–6–134, C.R.S.1973, in 1976 in an effort to thwart the use of a vehicular theft–device known as the "salvage switch". In a "salvage switch", a person acquires the certificate of title and vehicle identification number (V.I.N.) plates of a damaged vehicle by purchasing the vehicle at a salvage–yard.

The V.I.N. plates are usually located on several parts of the vehicle, such as the frame, engine and dashboard, having been placed there by the manufacturer as a basis for identification. The V.I.N. plates are attached to a stolen vehicle of the same make and model as listed on the certificate of title. The stolen vehicle then can be marketed for sale. The title certificate of the salvage–vehicle, which lists the V.I.N. as the primary basis of identification, is transferred to the purchaser at the time of sale. The result is a motor vehicle extremely difficult to identify as stolen, even upon careful scrutiny.

The 1976 amended version of section 42–6–134, Colo.Sess.Laws 1976, ch. 169, Sec. 47, 42–6–134 at 811, provides:

"The owner of any motor vehicle for which a Colorado certificate of title has been issued, upon the destruction or dismantling of said motor vehicle, upon its being changed in such manner that it is no longer a motor vehicle, or *upon its being sold or otherwise disposed of as salvage*, shall surrender his certificate of title thereto to the director with the request that such certificate of title be cancelled; and, upon said owner's procuring the consent thereto of the holders of any mortgages noted on the certificate of title and shown to be unreleased in the office of the director [of the Department of Revenue], such certificate may thereupon be cancelled. *Any person who violates any of the provisions of this section commits a class 1 petty offense and, upon conviction thereof, shall be punished as provided in section 18–1–107, C.R.S.1973.*" (emphasis added.) [1]

1. The emphasized portions of the statute were added in 1976.

According to testimony presented at the hearing in the district court, the statutory requirement that the certificate of title be surrendered "upon its being sold or otherwise disposed of as salvage" prevents any further transfer of the certificate of title by salvage pools or salvage dealers, and thereby eliminates the potential for a "salvage switch" by someone purchasing the vehicle as salvage.

Regulation 42–6–134, 1 C.C.R. 204–2, provides for the issuance of a "salvage receipt" upon surrender of the certificate of title. A "salvage receipt" can be transferred. If the vehicle is thereafter rebuilt, a certificate of title will be issued for the rebuilt vehicle upon submission of the "salvage receipt" to the department, along with a notarized statement of the procedure and parts used to rebuild or restore the vehicle, the receipts for such parts, and a certification that the vehicle meets the requirements of Colorado vehicle inspection. The "salvage receipt", unlike the certificate of title, provides an audit trail in the records of the department.

In March 1978 the department published proposed regulation 42–6–134 pertaining to the surrender and cancellation of certificates of title. A rule–making hearing was held as required by section 24–4–103(4) of the State Administrative Procedure Act, C.R.S.1973 (1979 Supp.). Appellees appeared at the hearing and opposed the regulation. The department adopted regulation 42–6–134, 1 C.C.R. 204–2, entitled Surrender and Cancellation of Title, on September 10, 1978, with an effective date of October 1, 1978. Subsection (I)(iv) of the regulation, which is significant to this controversy, provides as follows:

" 'Sold or otherwise disposed of as salvage' shall include the following:

a) The sale or transfer of a motor vehicle, the ownership of which has been assumed by a lienholder or insurance carrier after such vehicle has been damaged by collision, fire, flood or other such occurrence and when such vehicle is not to be repaired by or for the owner in whose name such vehicle was last registered (the 'registered owner') OR

b) The transfer of a damaged motor vehicle which has not been repaired after a total loss settlement has been made by an insurance carrier with respect to the vehicle but ownership of the vehicle has been retained by the registered owner.

c) In the event that a motor vehicle having an estimated value of over $1,000, not covered by insurance, is damaged to the extent that the estimated cost of repair exceeds the wholesale value of the vehicle and such ownership is transferred by its registered owner without repairing the vehicle." [2]

After adoption of the regulation, the appellees commenced a timely action for judicial review.[3] The court determined that

section 42–6–134, C.R.S.1973 (1979 Supp.), was unconstitutional; that regulation 42–6–134 was invalid; and that the department should be permanently enjoined from enforcing both the statute and regulation. The district court's judgment was predicated on the following conclusions: (1) section 42–6–134, C.R.S.1973 (1979 Supp.), is void for vagueness because it fails to adequately define "salvage"; (2) the statute is invalid as an unlawful delegation of legislative authority by the General Assembly to the department; (3) regulation 42–6–134 is invalid because its adoption was not based on the record of the rule–making hearing, as required by section 24–4–103(4), C.R.S.1973 (1979 Supp.); (4) the regulation constitutes an unlawful exercise of the department's delegated authority, section 24–4–103(8)(a), C.R.S.1973 (1979 Supp.); (5) the regulation is an unlawful delegation of authority to insurance companies to determine the criminal liability of an owner; (6) the regulation is invalid because it conflicts with sections 42–6–108 and 109 of the Certificate of Title Act, and, therefore, is outside the scope of delegated agency–power under section 24–4–103(8)(a), C.R.S.1973 (1979 Supp.); and (7) the regulation deprives the appellees of a property interest without due process of law.

We address first the constitutionality of section 42–6–134, C.R.S.1973 (1979 Supp.), and then the validity of regulation 42–6–134.

## I. THE STATUTE

The district court determined that section 42–6–134, C.R.S.1973 (1979 Supp.) is void for vagueness in violation of *U.S. Const.* Amend. XIV, and *Colo. Const.* Art. II, Sec. 25, and that it represents an unlawful delegation of legislative authority to the department. We disagree.

---

2. Regulation 42–6–134, 1 C.C.R. 204–2, is set forth in its entirety in the Appendix to this opinion.

3. The appellees are aggrieved parties under section 24–4–102(3.5), C.R.S.1973 (1979 Supp.), as they were exposed to potential business and economic loss due to the effect of regulation

42 6–134 on their ability both to acquire certificates of title to motor vehicles and to sell those vehicles. As aggrieved parties they had standing to commence an action for judicial review under section 24–4–106(4), C.R.S.1973 (1979 Supp.).

## A. *Void For Vagueness*

Generally, a statute is presumed to be constitutional and a party challenging the statute must prove its invalidity beyond a reasonable doubt. *Mr. Luckys, Inc. v. Dolan*, 197 Colo. 195, 591 P.2d 1021 (1979); *Fry Roofing Co. v. Department of Health*, 179 Colo. 223, 499 P.2d 1176 (1972); *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 493 P.2d 660 (1972). Moreover, if reasonably possible, a statute should be construed so as to avoid a declaration of invalidity for vagueness. *R & F Enterprises, Inc. v. Board of County Commissioners*, Colo., 606 P.2d 64 (1980); *Mr. Luckys, Inc. v. Dolan, supra. See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

We stated recently in *LDS, Inc. v. Healy*, 197 Colo. 19, 21, 589 P.2d 490, 491 (1979), that a statute is unconstitutionally vague if "its prohibitions are not sufficiently defined so as to give fair warning as to what conduct is prohibited" or if "it contains no explicit standards for application so that a danger of arbitrary and capricious enforcement exists." However, we have also recognized that "[s]cientific exactitude in statutory language is not required", *LDS, Inc. v. Healy, supra* at 22, 589 P.2d at 492, and that "a statute need not be drafted with the greatest possible facility or lucidity of expression if it meets the minimal requirements of due process." *People v. Blue*, 190 Colo. 95, 100, 544 P.2d 385, 389 (1975); *accord, Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976). There are reciprocal stresses present in statutory drafting. A statute must be sufficiently specific in order to give fair warning of the conduct prohibited and, simultaneously, sufficiently general to address the essential problem under varied circumstances and during changing times. *See Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *R & F Enterprises, Inc. v. Board of County Commissioners, supra.*

Without purporting to cabin the statutory language employed in section 42–6–134, it is apparent that the term "salvage", in its statutory context, connotes the secondary or scrap value of a motor vehicle stemming from à state of damage or disrepair that renders the vehicle unsuitable for its originally intended use on the public highways, in the absence of major alteration or repair. We find that the term "sold or otherwise disposed of as salvage" is sufficiently definite so as to provide notice to potential wrongdoers of the proscribed conduct and to protect against discriminatory enforcement.

## B. *Unlawful Delegation*

The district court concluded that section 42–6–134, C.R.S.1973 (1979 Supp.), unlawfully delegated legislative authority to the department in contravention of the Colorado Constitution, *Colo. Const.* Art. III and Art. V, Sec. 1. Although not articulated in its findings and conclusions, the court apparently believed that the statute lacked sufficient standards for the department to validly exercise its rule–making power thereunder.

It is well established that while the legislature may not delegate the power to make or define a law, it may delegate the power to promulgate rules and regulations to executive agencies so long as sufficient standards are set forth for the proper exercise of the agency's rule–making function. *Colorado River Water Conservation District v. Colorado Water Conservation Board*, 197 Colo. 469, 594 P.2d 570 (1979); *Fry Roofing Co. v. Department of Health, supra; Asphalt Paving Co. v. Board of County Commissioners*, 162 Colo. 254, 425 P.2d 289 (1967); *Swisher v. Brown*, 157 Colo. 378, 402 P.2d 621 (1965); *Olin Mathieson Chemical Corp. v. Francis*, 134 Colo. 160, 301 P.2d 139 (1956); *see Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).

Section 42–6–104 gives the director of the department authority to make "reasonable rules and regulations", and prescribe the use of such forms and procedures as àre "reasonably necessary or essential" to the administration of the Certificate of Title Act. Such broad standards as "reasonable"

and "reasonably necessary" have been found to be sufficient to validate a grant of legislative authority to an administrative agency. *See, e. g., Fry Roofing Co. v. Department of Health, supra; Asphalt Paving Co. v. Board of County Commissioners, supra.* Moreover, because the regulation here was promulgated in connection with section 42–6–134, C.R.S.1973 (1979 Supp.), the word "salvage" itself may be regarded as a rule–making standard.

 Under section 42–6–134 the department's rule–making authority with respect to surrender of the owner's certificate of title is limited to those instances set forth in the statute–that is, upon the destruction or dismantling of the vehicle, upon its being changed so that it is no longer a motor vehicle, and "upon its being sold or otherwise disposed of as salvage." The statute, not the regulation, subjects the owner to criminal liability (class 1 petty offense) for failure to surrender the certificate in these instances. The regulation, consistent with proper legislative delegation, spells out those situations included within the operative language of the statute. *See, e. g., People ex rel. Dunbar v. Giordano*, 173 Colo. 567, 481 P.2d 415 (1971); *Asphalt Paving Co. v. Board of County Commissioners, supra; see also People v. Willson*, 187 Colo. 141, 528 P.2d 1315 (1974). Accordingly, we conclude that section 42–6–134 is not invalid as an improper delegation of legislative authority to the department.[4]

## II. THE REGULATION

The district court concluded that regulation 42–6–134 is invalid for the following reasons: its adoption was not based on the record of the rule–making hearing; it constitutes an unlawful exercise of the department's delegated authority; it represents an unlawful delegation of enforcement powers to third parties; it conflicts with certain provisions of the Certificate of Title Act, section 42–6–101 *et seq.*, C.R.S.1973;

and it deprives appellees of due process of law. We reach contrary results and uphold the validity of the regulation.

### A. The Rule–Making Hearing

The district court's determination of the regulation's invalidity focused on the record of the rule–making hearing conducted pursuant to section 24–4–103(4), C.R.S.1973 (1979 Supp.). Specifically, the court found that only those objecting to the regulation made submissions at the rule–making hearing and that the record contained no submissions in support of the regulation. The district court's determination fails to recognize the function and purpose of a rule–making hearing, as distinguished from an adjudicative proceeding.

 Section 24–4–103(4), C.R.S.1973 (1979 Supp.), provides:

"The rules promulgated by the agency shall be based on the record which shall consist of proposed rules, evidence, exhibits, and other matters presented or considered . . . ."

The purpose of a public rule–making hearing is to "afford interested persons an opportunity to submit written data, views, or arguments . . . ." Section 24–4–103(4), C.R.S.1973 (1979 Supp.). Although section 24–4–103(4) provides that the agency "shall consider all submissions", it does not provide that such submissions shall be controlling even when unrebutted. The department proposing the regulation has no affirmative duty to offer evidence in support of it. As long as the proposed regulation is made part of the record, as was done here, the agency can choose to disregard, after consideration, adverse submissions and adopt the proposed regulation. We conclude, therefore, that the department's adoption of regulation 42–6–134 did not contravene the rule–making procedures of section 24–4–103(4), C.R.S.1973 (1979 Supp.).

---

4. The pronounced trend is "to permit liberal grants of discretion to administrative agencies in order to facilitate the administration of laws dealing with involved economic and governmental conditions." *Swisher v. Brown*, 157 Colo. 378, 389, 402 P.2d 621, 627 (1965). Thus, it is permissible to allow an agency "to fill in the details of an enactment." *Fry Roofing Co. v. Department of Health*, 179 Colo. 223, 228, 499 P.2d 1176, 1179 (1972).

## B. *Unlawful Exercise of Delegated Authority*

In determining that regulation 42–6–134(I)(iv) was an unlawful exercise of delegated authority the district court stated:

"The term 'salvage' is found to have a multitude of meanings in both law and common usage. The most appropriate, and only accurate meaning for the term as used in § 42–6–134, C.R.S.1973, is that which covers the physical acts of removing of economically valuable parts from an automobile, the scrapping of said vehicle for its inherent metal components, or the physical adaptation of the motor vehicle for some alternative physical, utilitarian purpose. . . ."

The court then concluded that the decision of an insurance company to sell a vehicle as salvage after a total loss settlement did not comport with the above definition of salvage. We disagree with this analysis.

▆ Prior to the 1976 amendment, section 42–6–134, C.R.S.1973, provided that a certificate of title need be surrendered only upon "the destruction or dismantling of said motor vehicle or upon its being changed in such manner that it is no longer a motor vehicle . . . ." However, section 42–6–134 was amended in 1976 to require the surrender of the certificate upon the vehicle's "being sold or otherwise disposed of as salvage." The trial court's restrictive definition of salvage was essentially a paraphrase of the pre–1976 statute, and it gave no effect whatever to the 1976 amendment. By that amendment the legislature obviously intended to extend the owner's duty of title–surrender to those situations where the vehicle is "sold or otherwise disposed of as salvage." The subject matter of the regulation is consistent with that legislative intent.

▆ Furthermore, the regulation was promulgated pursuant to the Certificate of Title Act, section 42–6–101 *et seq.*, C.R.S. 1973. The director of the department is charged with the administration of this act and, for that purpose, "he is vested with the power to make such reasonable rules and regulations . . . and provide such procedures as may be reasonably necessary or essential to [its] efficient administration . . . ." Section 42–6–104, C.R.S.1973. Clearly, the regulation is within the director's delegated authority and is in keeping with his rule–making power under the Act.

## C. *Unlawful Delegation to Insurance Companies*

▆ The district court was in error in concluding that "the regulation is an unlawful delegation to a third party, to wit: the automobile insurance industry, of an operative part of a state law which carries criminal sanctions for its violation."

Regulation 42–6–134(I)(iv)(b) provides that a transfer of a damaged and unrepaired motor vehicle retained by the owner after a total loss settlement by an insurance carrier shall be treated as "sold or otherwise disposed of as salvage." Appellees, relying on *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972), argue that the regulation unconstitutionally grants the automobile insurance industry unfettered discretion to determine whether or not an owner is subject to criminal liability for failing to surrender the certificate of title after a total loss settlement. We find this argument untenable.

Admittedly, the owner's transfer of a damaged and unrepaired vehicle to another, after a total loss insurance settlement, requires the owner to surrender his title certificate or face liability for a class 1 petty offense under section 42–6–134, C.R.S.1973 (1979 Supp.). However, the determinative fact of liability is not the insurance company's decision to make a total loss settlement with the owner. Rather, liability depends upon the owner's failure to surrender the title in connection with his transfer of the damaged and unrepaired vehicle to another—an act which is clearly a sale or other disposition as salvage under the statute. The owner has the same responsibility of title–surrender when he transfers to another a damaged and unrepaired vehicle *not covered by insurance*, and the vehicle has an

estimated value in excess of $1,000, but the estimated cost of repair exceeds its wholesale cost. Regulation 42–6–134 (I)(iv)(c), 1 C.C.R. 204–2. This act of the owner also qualifies as a sale or other disposition as salvage under the statute.

Contrary to the district court's determination, we do not perceive the regulation as an unlawful delegation to insurance companies of authority to determine or control the criminal responsibility of the owner. *See Norsworthy v. Department of Revenue*, 197 Colo. 527, 594 P.2d 1055 (1979).[5]

### D. *Inconsistency With the Certificate of Title Act*

The district court invalidated the regulation on the ground that it denies the appellees their statutory right to prove ownership under sections 42–6–108 and 109 of the Certificate of Title Act, and, because of this conflict, the regulation is beyond the scope of delegated agency power under section 24–4–103(8)(a), C.R.S.1973 (1979 Supp.). We find no such inconsistency between the regulation and the Certificate of Title Act.

Section 42–6–108 provides that no person shall sell or otherwise dispose of a motor vehicle without delivering the certificate of title to the purchaser or transferee, and no right, title, or interest in the motor vehicle is acquired until the title certificate is properly transferred. Section 42–6–109 requires the owner to execute a transfer of the title certificate upon sale or transfer of the vehicle, and the purchaser must then present the transferred certificate to the department for a new certificate. However, even prior to the 1976 amendment of section 42–6–134, the statute required vehicle owners to surrender their certificate of title upon "the destruction or dismantling of said motor vehicle or upon its being changed in such manner that it is no longer a motor vehicle."

■ The failure to deliver a certificate of title does not prevent the acquisition of ownership rights as between the parties to the transaction. *United Fire and Casualty Co. v. Perez*, 161 Colo. 31, 419 P.2d 663 (1966); *Morrison v. Droll*, 41 Colo.App. 354, 588 P.2d 383 (1978). *See also Randall v. Carroll*, 30 Colo.App. 45, 488 P.2d 250 (1971). This is especially so in the case where, as contemplated by the 1976 amendment to section 42–6–134, the vehicle is "sold or otherwise disposed of as salvage," and there is no certificate of title to transfer to the salvage–yard operator because of the owner's surrender of it to the department.

■ We construe section 42–6–134 and the 1976 amendment thereto as exceptions to the title transfer requirements of sections 42–6–108 and 109. This construction gives effect to the statute in its entirety, section 2–4–201(1)(b), C.R.S.1973, and is consistent with the object sought to be attained by the 1976 amendment, section 2–4–203(1)(a), C.R.S.1973.

### E. *Due Process*

■ The district court concluded that the regulation deprived appellees of a property interest without due process of law. *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25. The court, however, neither described the property interest nor specified the manner of deprivation. Conceding that the regulation precludes salvage–yard operators from receiving a certificate of title upon transfer to them of a vehicle "sold or otherwise disposed of as salvage," their due process rights are not implicated unless they have a property interest in title certificates as the exclusive evidence of their ownership interest in salvage–vehicles. We find no such property interest amounting to a constitutional entitlement under the circumstances here.

■ Business activities are subject to reasonable regulation by the state in the exercise of the police power to preserve and enhance the public health, safety and welfare. *Lincoln Union v. Northwestern Co.*,

---

5. Under regulation 42–6–134(I)(iv)(a) and (III), 1 C.C.R. 204-2, when an insurance carrier makes a total loss settlement with the owner after a collision and assumes ownership of the vehicle, the carrier has the responsibility to surrender the certificate of title to the department upon selling or otherwise disposing of the vehicle as salvage.

335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949); *see also, e. g., New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978); *People ex rel. Dunbar v. Gym of America, Inc., supra.* The proper test in a case such as this is whether the regulation is reasonably designed to further a legitimate state interest. *Winkler v. Department of Health,* 193 Colo. 170, 564 P.2d 107 (1977); *City of Englewood v. Apostolic Christian Church,* 146 Colo. 374, 362 P.2d 172 (1961). Regulation 42–6–134(I)(iv) clearly satisfies this test. By requiring the owner of the vehicle to surrender the certificate of title to the department upon the vehicle being transferred to a salvage–yard operator, the regulation deters a "salvage switch" and renders less likely the opportunity for use of the certificates of title in connection with automobile thefts.

■ Moreover, the regulation does not divest the appellees of a property interest in salvage–vehicles. On the contrary subsection (IV) of the regulation provides for the issuance of a "salvage receipt" upon surrender of the title, and that "salvage receipt" may then be used in any subsequent transfer of the salvage–vehicle. If the salvage–vehicle is rebuilt or restored so as to be eligible for further use on the highway, then upon presentation of the "salvage receipt", along with proof of the vehicle's restoration, a certificate of title may be issued.[6]

### F. *Equal Protection*

The appellees in the complaint claimed that the regulation denied them equal protection of the laws under the federal and state constitutions. *U.S. Const.* Amend. XIV; *Colo. Const,* Art. II, Sec. 25.[7] They claimed that owners of vehicles not the subject of insurance settlements are not required to surrender certificates of title whereas the appellees, as the ultimate transferees of comparably damaged vehicles that were the subject of insurance settlements, are prohibited from acquiring ownership by certificates of title. The district court did not address the equal protection claim. We find no merit in it.[8]

■ Contrary to appellees' assumption, the regulation does require an owner who transfers a damaged vehicle to surrender the certificate of title when the vehicle is valued in excess of $1,000, it is not covered by insurance, and the cost of repair exceeds its wholesale value. Regulation 42–6–134(I)(iv)(c), 1 C.C.R. 204–2. Moreover, any classification with respect to motor vehicle owners required to surrender their certificate of title upon sale or other disposition as salvage is reasonably related to a legitimate governmental purpose. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Winkler v. Department of Health, supra; Edwards v. Price,* 191 Colo. 46, 550 P.2d 856 (1976); *Stevenson v. Industrial Commission,* 190 Colo. 234, 545 P.2d 712 (1976).

### III. *CONCLUSION*

We uphold the constitutionality of section 42–6–134, C.R.S.1973 (1979 Supp.), and regulation 42–6–134, 1 C.C.R. 204–2. Accord-

---

**6.** In the event a salvage yard operator or anyone else in possession of a salvage–vehicle lacks a "salvage receipt" or other evidence of ownership, he may still apply for a certificate of title upon compliance with the bonding provisions of section 42–6–113, C.R.S.1973 (1979 Supp.).

**7.** The right to equal protection of the laws is included within due process of law under the Colorado Constitution. *E. g., People v. Max,* 70 Colo. 100, 198 P. 150 (1921).

**8.** Appellees' equal protection argument is based on an alleged classification with respect to third parties (owners of vehicles receiving insurance loss settlements), and their standing to raise this claim is questionable. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). However, since appellees are claiming an equal protection violation as transferees of that class (owners of vehicles receiving insurance loss settlements), we have elected to address and resolve their claim.

ingly, the judgment of the district court.is reversed.

HODGES, C. J., and DUBOFSKY, J., do not participate.

## APPENDIX

*"Regulation 42–6–134–Surrender and Cancellation of Title.*

"I) Definitions:

i) 'Destruction'. The action of destroying a motor vehicle. To ruin completely, beyond possibility of use as a motor vehicle.

ii) 'Dismantling'. To take to pieces without intent to rebuild.

iii) 'Changed in such a manner that it is no longer a motor vehicle'. The action of permanently modifying, altering or rebuilding by the addition or deletion of assemblies, subassemblies, parts or pieces so that in its final form it is no longer capable of being used as a motor vehicle.

iv) 'Sold or otherwise disposed of as salvage' shall include the following:

a) The sale or transfer of a motor vehicle, the ownership of which has been assumed by a lienholder or insurance carrier after such vehicle has been damaged by collision, fire, flood or other such occurrence and when such vehicle is not to be repaired by or for the owner in whose name such vehicle was last registered (the 'registered owner') OR

b) The transfer of a damaged motor vehicle which has not been repaired after a total loss settlement has been made by an insurance carrier with respect to the vehicle but ownership of the vehicle has been retained by the registered owner.

c) In the event that a motor vehicle having an estimated value of over $1,000, not covered by insurance, is damaged to the extent that the estimated cost of repair exceeds the wholesale value of the vehicle and such ownership is transferred by its registered owner without repairing the vehicle.

"II) Upon the destruction, dismantling or changing in such manner that it is no longer a motor vehicle the owner of such vehicle shall forward to the Motor Vehicle Division, Department of Revenue, the title to such vehicle plainly marked 'JUNK'. Upon receipt of such title, properly marked, and upon said owner procuring the consent thereto of the holders of any mortgages noted on the certificate of title and shown to be unreleased in the office of the director, such title shall thereupon be cancelled.

"III) Upon a motor vehicle being sold or otherwise disposed of as salvage, the owner, lienholder of record or insurance carrier who is the transferor of such vehicle shall surrender title to such vehicle to the county clerk and recorder, the Manager of Revenue, City and County of Denver or the Department of Revenue, Motor Vehicle Division.

"IV) Upon the surrender of a title, application may be made with the payment of a fee of $1.50 for a 'SALVAGE RECEIPT'. Said 'SALVAGE RECEIPT' shall contain provisions for transfer of said salvage.

"V) In the event a motor vehicle transferred on a 'SALVAGE RECEIPT' is rebuilt or restored to condition to be eligible for further use on the highways, the rebuilder or restorer of such vehicle shall submit the 'SALVAGE RECEIPT', a notarized statement of the procedure and parts used to rebuild or restore such vehicle, along with receipts for such parts, and a certification that such vehicle meets the requirements of Colorado vehicle inspection. Upon presentation of these documents to the county clerk or the Manager of Revenue in the City and County of Denver, application for a certificate of title may be made.

If a salvage vehicle is rebuilt or restored using parts bearing vehicle identification numbers from other vehicles, such applicant must apply for an assigned Colorado Vehicle Identification Number.

"VI) If the applicant for a 'SALVAGE RECEIPT' be the owner, lienholder of record, insurance carrier or a licensed motor vehicle dealer, no sales tax shall be due or payable on such application."