FREMONT RE–1 SCHOOL DISTRICT, a body corporate, and Norman R. Lemons, individually and as director of business services for Fremont RE–1 School District, Petitioners,

v.

Joyce JACOBS, Respondent.

No. 85SC75.

Supreme Court of Colorado,
En Banc.

May 18, 1987.

Rehearing Denied June 8, 1987.

McDermott, Kiehnhoff & Meconi, Rocco F. Meconi, John A. McDermott, Canon City, for petitioners.

Jeffrey K. Holmes, Denver, for respondent.

ROVIRA, Justice.

Respondent Joyce Jacobs, a bus driver for the Fremont RE–1 School District, filed suit in May 1983 after she was fired by Norman Lemons, the school district's director of business services, in February 1983. She alleged that her firing was unlawful because the school board could not delegate to the director of business services the power to discharge her. The trial court disagreed and granted summary judgment for the school district and Lemons. In *Jacobs v. Fremont RE–1 School District,* 697 P.2d 414 (Colo.App.1984), the court of appeals reversed, concluding that the school board could lawfully delegate the authority to dismiss bus drivers because the function was administrative or ministerial in nature and not legislative or judicial. However, it found that the delegation would be valid only if it were accompanied by specific standards which left little or nothing to the discretion or judgment of the school administrators. Since the question of adequate standards had not been resolved by the trial court, the court of appeals found that summary judgment was inappropriate. We now conclude that the school board could lawfully delegate to its agents the task of firing bus drivers and that the standards set forth by the Fremont School Board in this case were adequate as a matter of law. Therefore, we affirm in part and reverse in part the judgment of the court of appeals.

## I.

Undisputed facts in the record show that prior to the firing of Jacobs the Fremont Board of Education had adopted a policy for the discharge of "classified personnel" —which included bus drivers like Jacobs and also secretaries, office clerks, bookkeepers, and maintenance employees. The policy, which was published in an employee handbook, provided that:

The Board of Education delegates to the Superintendent of Schools the authority to dismiss classified personnel. Further, the Superintendent of Schools may delegate this authority to the Director of Business Services and/or the Director of Personnel. Classified employees shall be employed for such time as the District is in need of, or desirous of, the services of such employees. The duration of employment is unspecified and solely rests at the discretion of the District.

. . . .

[D]ismissal of classified employees shall be unaffected by the employee's religious beliefs, marital status, racial or ethnic background, sex, or participation in community affairs.

In February 1983, following a disagreement between Jacobs and her superiors stemming from a disciplinary action Jacobs had taken on her bus, she was discharged by Lemons. Later, after Jacobs filed suit, the school board ratified her discharge.

## II.

The sole question presented for review here is whether the board of education could lawfully delegate to the superintendent of schools and, through him, to Lemons the authority to dismiss Jacobs. An examination of the relevant statutes discloses that the legislature has imposed upon school boards certain "duties," section 22–32–109, 9 C.R.S. (1973 & 1986 Supp.), and has granted them certain "powers," section 22–32–110, 9 C.R.S. (1973 & 1986 Supp.). The Fremont school board points out that the legislature has granted school boards the "power" to discharge personnel under section 22–32–110(h), but has not made employee discharge a "duty" of school boards

under section 22–32–109. It argues, therefore, that the school board was authorized to delegate the responsibility for discharging employees.

■ We disagree with this line of argument. As we read the statutes, section 22–32–109 sets forth mandatory "duties" of school boards and section 22–32–110 sets forth discretionary "powers." The listing of employee discharge as a "power" under section 22–32–110 indicates only that a school board may, but need not, exercise its authority to fire employees. The statutes, as we read them, do not specify the scope of a school board's authority to delegate its duties and powers—they merely indicate which powers a school board *may* exercise and which duties it *must* perform. *Cf.* *University of Colorado v. Silverman*, 192 Colo. 75, 555 P.2d 1155 (1976).

We turn, therefore, to the rule of construction we adopted in *Big Sandy School District No. 100–J v. Carroll*, 164 Colo. 173, 433 P.2d 325 (1967), a case which presented us with a similar issue. In that case, members of a school board informally authorized the superintendent to hire a principal-teacher and provided him with a signed, blank contract. Thereafter, the superintendent apparently hired one Barney Carroll for the post, but discharged him ten days later. Carroll sued for breach of contract. The issue, as a result, was whether the superintendent had authority to hire a principal-teacher without the school board's explicit approval of the job applicant and his rate of pay. In examining the Colorado statute then in effect, we initially noted that it was the school board's "duty" to employ teachers. We then discussed and applied the established rule of construction applicable to quasi-municipal corporations like the school district:

[T]he general rule is that ... a quasi-municipal corporation ... may delegate to subordinate officers and boards powers and functions which are ministerial or administrative in nature, where there is a fixed and certain standard or rule which leaves little or nothing to the judgment or discretion of the subordinate. However, legislative or judicial powers, in-

volving judgment and discretion on the part of the municipal body, which have been vested by statute in a municipal corporation may *not* be delegated unless such has been expressly authorized by the legislature.

*Big Sandy,* 164 Colo. at 178–79, 433 P.2d at 328. Analyzing the facts under this standard, we concluded that the power to employ teachers and fix their wages is a nondelegable statutory power which the legislature has conferred solely on the school board. It was thus not subject to delegation without explicit legislative authorization.

The principle announced in *Big Sandy* serves several salutary purposes. By placing limits on the delegation of power by school boards, it assures the public that school board members—who are subject to public election—must take responsibility for significant policy decisions associated with management of the school district. *E.g., Greeley Police Union v. City Council,* 191 Colo. 419, 422, 553 P.2d 790, 792 (1976). Further, the rule protects school districts from incurring significant liabilities based on actions taken by school administrators without the full considered approval of the school board. Lastly, by limiting delegation as a rule of statutory construction, questions concerning the constitutionality of delegation of legislative powers are avoided. *E.g., Cottrell v. City and County of Denver,* 636 P.2d 703 (Colo. 1981).

However, we are convinced that the *Big Sandy* rule should not be extended beyond the limited purposes it serves. As a practical matter, school districts require a significant degree of administrative flexibility in order to function smoothly on a day-to-day basis between meetings of their school boards. As school organizations have grown in size and their functions have become more diverse and complex, the need for administrative delegation has become all the more imperative. If the law were to insist on strict limitations on delegation of authority, school board members might tend to become mired in the details of routine operations, and the effectiveness and usefulness of school administrators

might be hampered. As a result, the trend in this area of the law has been to allow greater flexibility and away from the insistence on detailed and definite standards. O. Reynolds, *Local Government Law* § 57, at 166-68 (1982). In this vein, we have said:

> The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases.

*Asphalt Paving Co. v. Board of County Commissioners,* 162 Colo. 254, 263–64, 425 P.2d 289, 294 (1967). In a somewhat different context, we have held that:

> [T]he [School] Board can select reasonable means to carry out its duties and responsibilities incidental to the sound development of employer-employee relations, as long as the means selected are not prohibited by law or against public policy.

*Littleton Education Association v. Arapahoe County School District,* 191 Colo. 411, 416, 553 P.2d 793, 797 (1976) (citing, *Louisiana Teachers' Association v. New Orleans Parish School Board,* 303 So.2d 564 (La.App.1974)).

■ Analyzing the question before us with these principles in mind, we conclude that the discharge of a bus driver is an administrative function subject to delegation by the school board. In our view, this action was not significantly related to the policy-making duties of the Fremont school board. *Compare City of Idaho Springs v. Blackwell,* 731 P.2d 1250 (Colo.1987). In reaching this conclusion, we note that the character of this action—the discharge of a bus driver—is collateral to the school board's educational mission and the significance of this action is not so great that the law should demand the formal accountability of school board members before recognizing the validity of the action. *See* 1 J. Rapp, *Education Law,* § 3.05[5][c], at 3–83 (1987).

We recognize that in the past we have held that the power to hire teachers and fix their wages and the power to dismiss them are nondelegable powers. *Snider v. Kit Carson School District R-1*, 166 Colo. 180, 442 P.2d 429 (1968); *Big Sandy School District No. 100-J v. Carroll,* 164 Colo. 173, 433 P.2d 325 (1967); *cf. University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976). However, the hiring and firing of teachers directly affect the educational mission of the school district, and a central purpose for the election of school board members is to obtain their judgment on such matters. Actions that do not have a significant impact on institutional policy, on the other hand, are properly characterized as administrative in character and therefore are delegable. *Kreith v. University of Colorado,* 689 P.2d 718 (Colo.App. 1984) (holding that the authority to accept teacher resignation or retirement offers is delegable). We do not believe the discharge of a bus driver significantly affects the Fremont school board's institutional policy; therefore, we agree with the court of appeals that the power to discharge Jacobs was properly delegable.

However, we disagree with the holding of the court of appeals that further investigation of the adequacy of the standards limiting the discretion of the school administrators is required in this case. In our view, the standards set forth by the Fremont school board were adequate as a matter of law. Under the school board's employee handbook, "classified employees" served at the will of the district except that they could not be dismissed on account of their religious beliefs, marital status, racial or ethnic background, sex or participation in community affairs.

■■■■ Ordinarily, a delegation of discretion this broad might run afoul of even the liberalized rules that have been applied to administrative delegation in recent cases. The requirement of standards to limit administrative discretion is designed to assure that administrative action will be rational and consistent and that subsequent judicial review will be available and effective. *E.g., Cottrell v. City and County of Denver,* 636 P.2d 703, 709 (Colo.1981). However, the law has traditionally accorded employers—including government agencies—broad discretion in the discharge of employees who are terminable at will. The general rule is that, absent a violation of constitutional rights, judicial review is not available to review the firing of an employee who is terminable at will. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987); *Johnson v. Jefferson County Board of Health,* 662 P.2d 463, 471-72 (Colo.1983). Such an employee may be dismissed without any justifying cause whatever. *Keenan,* 731 P.2d at 711; *Johnson,* 662 P.2d at 471. *See* 2 J. Rapp, *Education Law* § 6.15[2][d][i], at 6-274 (1986) ("If no constitutional right is involved, a nontenured employee generally may be refused employment for any reason, for no reason, or even for reasons unsupported by fact.").

Further, the traditional rule with respect to local government employees has been that:

[L]ocal government employees hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law.

2A C. Antieau, *Muncipal Corporation Law* § 22.158, at 22-239 (1987); *accord, Marzec v. Fremont School District,* 142 Colo. 83, 85-86, 349 P.2d 699, 701 (1960). Here, no additional restrictions or limitations relevant to this case have been provided by law. To the contrary, the Colorado legislature has explicitly provided tenure for specified teachers but has adopted no comparable protections for "classified employees" like Jacobs. *See* Teacher Employment, Dismissal, and Tenure Act of 1967, § 22-63-101 *et seq.,* 9 C.R.S. (1973 & 1986 Supp.); § 22-32-110(k), 9 C.R.S. (1973); *Nagy v. Board of Education,* 31 Colo.App. 45, 500 P.2d 987 (1972) (social services consultant not protected as "teacher" under Teacher Tenure Act). Furthermore, the Fremont school board has explicitly categorized classified employees as terminable at will with a few limitations not pertinent here. As a result, we are not

convinced the rule of construction applied in *Big Sandy* should operate to override the considered policy choices of the legislature and the school board.

The court of appeals' insistence on specific standards for dismissal, however, might indirectly convert Fremont's terminable at will employees to employees terminable only for cause—unless the school board were willing to decide itself every case involving the discharge of a "classified employee." Further, the adoption of more specific standards for dismissal could well create "property" rights for classified employees that would entitle them to a panoply of procedural due process protections. *E.g., Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see also Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Additionally, the adoption of specific dismissal standards might convert what is now an administrative function into a judicial function, which is not subject to delegation under the *Big Sandy* rule absent explicit legislative authorization. *E.g., Civil Service Association v. San Francisco Redevelopment Agency,* 166 Cal.App.3d 1222, 213 Cal.Rptr. 1 (1985) (dismissal of employee under civil service system is a quasi-judicial function). Consequently, it may be meaningless to hold that the discharge power may be delegated if more specific standards are adopted; if more specific standards are adopted, the power may no longer be delegable. We decline to overrule the policy decisions of the Colorado legislature and the Fremont school board in such a roundabout fashion. In our view, the standards adopted by the school board are sufficient as a matter of law.[1]

Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part, and we remand to the court with instructions that it reinstate summary judgment on behalf of the petitioners.

ERICKSON, J., specially concurs in the result.

ERICKSON, Justice, specially concurring in the result:

I concur in the result reached by the majority. In my view, the Fremont Board of Education had the authority to delegate to the superintendent of schools and the director of business services the power to terminate classified personnel. I also agree that the delegated authority was not invalidated by the lack of standards to guide the discretion of the superintendent or the director.

The superintendent was granted the power to terminate employees who serve at the will or the pleasure of their employer. Although the director of business services was prohibited from considering suspect criteria in his decision to terminate an employee, the board delegated authority and vested discretion to terminate an at-will employee in the superintendent and the director of business services. In my view, the court of appeals requirement of standards to guide what is by definition a discretionary decision is undesirable.

I am not courageous enough to predict, as the majority has, the problems that would come from the adoption of standards.

Accordingly, I specially concur in the result reached by the majority.

---

1. Ideally, any delegation of authority to fire classified employees should be accompanied by a requirement that the administrator's decisions to terminate such employees be reported to the school board in order that the board may assure itself that the delegated authority is being exercised rationally and in a manner consistent with the overriding policy of the school board.